

**K**AMERMAN, **U**NCYK, **S**ONIKER **&** **K**LEIN **P.C.**

COUNSELORS AT LAW

1700 BROADWAY, 16TH FLOOR

NEW YORK, NEW YORK 10019

———

(212) 400-4930

March 2, 2026

Matthew D. Hardin
101 Rainbow Dr.
PMB 11506
Livingston, TX 77399
Via email to: hardinlawpllc@icloud.com

**RE: In response to your March 2, 2026 letter**

Dear Mr. Hardin:

  I am in receipt of your letter of March 2, 2026, and I write in response for two purposes. First, to be expressly clear that under the terms of Sec. 512(c), your client has *already* lost the benefit of the DMCA safe harbor procedure. And second, I write to detail the reasons your client's fair use defense is without merit, in order to be sure that your client's awareness of our reasoning below can be taken into account in any assessment of his willfulness.

**1. Your client has forfeited the DMCA safe harbor.**

  I am certain it will come as no surprise to you that by refusing to "expeditiously []remove, or disable access to, the material that is claimed to be infringing" as required by Sec. 512(c)(1)(C), your client has forfeited any claim to the liability shield to which it might otherwise have been entitled under Sec. 512(c). By design, Sec. 512 provides no evaluative role for a service provider that is merely passively hosting (and therefore immune from liability for hosting) infringing user-generated content; the service provider must remove the content upon receipt of a DMCA notification and must restore the content upon receipt of a compliant counter-notification. Consistent with the reason for the liability shield (that is, recognition of the service provider's uninvolved role) evaluation of the merits of the infringement claim beyond validation of the existence and ownership of the copyright is left to the parties and the courts. Thus, the requirements of the safe harbor are **conjunctive** rather than disjunctive: not only must the service provider proactively remove material it is **aware** is infringing, without regard to notice, 17 U.S.C. § 512(c)(1)(A)(iii), but it must also expeditiously remove or disable access to any material about which it has received notice of a "claim[]" of infringement, without regard to the provider's (claimed) subjective belief regarding potential defenses. 17 U.S.C. § 512(c)(1)(C).

  Your client's failure to do so, in the absence of a valid counter-notification, has thus waived the benefit of the DMCA safe harbor.

**2. Your argument regarding terms of service agreements is not valid.**

Your assertion that Mr. Moon may invoke a license derived from Bluesky's Terms of Service is incorrect as a matter of law. Platform Terms of Service licenses are granted to the platform operator for purposes of operating its own service. They do not create sublicensable rights that third parties may independently invoke.

**3. You have no fair use defense.**

Your fair use analysis relies on precedent that has been materially superseded. The Supreme Court's decision in *Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*[1] tightened the first-factor transformativeness analysis in ways that are fatal to your client's position.

First, under *Warhol*, a secondary use is not transformative merely because it conveys a different message or is accompanied by commentary. The Court held that the critical inquiry is whether the secondary use serves a distinct purpose from the original, not merely a different aesthetic or critical overlay.[2] Both uses at issue here reproduce the photograph to identify its subject. That is precisely the original function of a portrait photograph. The overlaid text in the second image concerns matters entirely unrelated to the photograph's creative content; it does not comment on the photograph's composition, artistic merit, or any quality of the work itself. It uses the photograph as an identifier while directing commentary at **the subject personally**. Under *Warhol*, that is not transformativeness; it is appropriation. Your reliance on *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994), is misplaced. *Campbell* involved a parody that targeted the original work itself. Neither use here parodies the photograph. The critical commentary is directed at the subject, not at any creative element of the work.

Second, the characterization of this professionally commissioned portrait as "a largely factual depiction" misreads *Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18 (1st Cir. 2000). *Nunez* applied the second factor in the specific context of news reporting about a public controversy in which the photograph itself was the subject of the news. No comparable context exists here. The photograph at issue is the product of deliberate professional creative choices, such as lighting, composition, framing, color treatment, and subject direction, made by a named working photographer. It is a creative work entitled to the full protection of the Copyright Act, and the second factor does not favor your client.

Third, your argument that reproduction of the entire work is justified because one cannot critique a specific image without reproducing it is inapplicable where the use does not constitute legitimate criticism of the copyrighted work itself.[3] Reproduction of the full image to deploy it as a vehicle for personal harassment of its subject is not within the scope of that principle.

Finally, the assertion that "there is no market for licensing this headshot to critics" confuses the relevant market inquiry. The question under the fourth factor is not whether the copyright holder would license to these particular users for these particular purposes, but

---

[1] 598 U.S. 508 (2023).
[2] *Id.* at 532.
[3] *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605 (2d Cir. 2006).

2

whether the secondary use harms the existing or potential market for the original work and for authorized derivatives.[4] A commercially commissioned professional portrait has an ascertainable market value that is harmed when the work is reproduced without authorization for purposes the copyright holder has not authorized.

**4. Your threat to invoke Sec. 512(f) is empty.**

   Your suggestion that this takedown notice was submitted without a good-faith belief that the use was infringing is without foundation. Fair use was considered. For the reasons set forth above, and in light of *Warhol*, the conclusion that neither use constitutes fair use is legally defensible and was reached in good faith. A Sec. 512(f) claim requires a knowing material misrepresentation. Disagreement about a contested legal question does not meet that standard.

   We note that your client has received this takedown notice and has made a considered and public decision not to remove the content, now memorialized by your correspondence on his behalf. Further, your client has not filed a counter-notice under Sec. 512(g) within a reasonable timeframe. The willfulness of the continued infringement is now a matter of record.

   To the extent that your client decides to belatedly comply with their obligation to remove the infringing material, we will consider that as we assess our next steps. We reserve all rights and remedies available to our client under the Copyright Act and otherwise.

             I remain,

              */s/ Lane Haygood*
              Lane A. Haygood

---

[4] *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 568 (1985).