**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

LOLCOW LLC,                                   :

                                         :   Civil Action No. 1:26-cv-02059-KPF

               Plaintiff,   :

                                         :

      -against-                    :

                                         :

ZHEN ELIZABETH FONG-JONES,         :

                                         :

           Defendant.   :

                                         :

------------------------------------------------------------x

# MEMORANDUM OF LAW IN SUPPORT OF

# SUBPOENA SUBJECTS' MOTION TO QUASH

---

i

**RANDAZZA** | LEGAL GROUP

**TABLE OF CONTENTS**

1.0     INTRODUCTION ...................................................................................... 1

2.0     ARGUMENT.............................................................................................. 2

    2.1     Defendant's Subpoenas are an Improper End Run Around Normal Discovery ......... 3

    2.2     Defendant's Subpoenas are Significantly Moot ......................................... 4

    2.3     The Subpoenas Invade Movants' Freedom of Speech and None
of the Alleged Infringements are Actionable Under the Fair Use Doctrine .......................... 5

    2.4     Movants' Posts are Non-Commercial, Critical, and Transformative Fair Use........... 6

    2.5     Under Factor 1, the Purpose and Character of Each Post are Transformative ........... 7

        2.5.1     The Posts Made by Does #1 ("3MMA") and #7, ("GettrGrifter")
are Transformative Because they Critique Defendant based on Defendant's
Minimization of Sexual Assault........................................................................ 10

        2.5.2     The Post Made by Doe #2, User "Sexy Senior Citizen" is Transformative
Because it Criticizes the Original Work by Modifying Elements Present in the
Original Work ....................................................................................... 11

        2.5.3     The Post Made by Doe #3, User "Diggus Bikus" is Transformative Because
it Criticizes the Original Work by Removing Elements Present in the Original Work.... 13

        2.5.4     The Post Made by Doe #4, User "Teriyakiburns" is Transformative
Because it Criticizes the Original Work by Contrasting the Image with
Additional Material................................................................................ 14

        2.5.5     The Post Made by Doe #5, User "Dread First," is Transformative Because
it Adds Material to the Original Work and has a Different Purpose .............................. 15

        2.5.6     The Post Made by Doe #6, User "The Mass Shooter Ron Soye" is
Transformative Because it Adds Material to the Original Work and has a
Different Purpose ................................................................................. 17

    2.6     Under Factor 1's Consideration of Commerciality and Bad-Faith, Each
Movant's Conduct Favors a Fair Use Finding....................................................... 17

    2.7     Under Factor 2, the Nature of the Original Work Favors Fair Use because
it was Previously Published and is not a Creative Work at the Core of Copyright's
Protection ......................................................................................... 19

RANDAZZA | LEGAL GROUP

2.8      Under Factor 3, The Amount and Substantiality of the Portion Used in Relation to the Copyrighted Work as a Whole Favors a Fair Use Finding .......................... 20

2.9      Under Factor 4, Each Subpoena's Respondent's Use has no Impact on the Original Work's Market and therefore the Factor Favors a Fair Use Finding..................... 22

2.10    Under the Second Arista Record Factor, Defendant's Subpoena Requests Are Insufficiently Specific.................................................................................................. 23

2.11    Under the Fourth Arista Record Factor and the First Amendment, Defendant seeks Constitutionally Privileged information, Regardless of Purported need to Pierce Anonymity ................................................................................................................. 24

2.12    Each of the Subpoena Respondents Maintains a Reasonable and Significant Expectation of Privacy.............................................................................................. 25

3.0      CONCLUSION............................................................................................... 25

CERTIFICATE OF SERVICE ................................................................................. 27

RANDAZZA | LEGAL GROUP

## TABLE OF AUTHORITIES

**CASES**

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
  591 U.S. 430 (2020)................................................................................................. 5

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
  598 U.S. 508 (2023)........................................................................................... passim

*Arista Records, LLC v. Doe 3*,
  604 F.3d 110 (2d Cir. 2010)............................................................................... passim

*Authors Guild v. Google, Inc.*,
  804 F.3d 202 (2d Cir. 2015)............................................................................... passim

*Barcroft Media, Ltd. v. Coed Media Grp., LLC*,
  297 F. Supp. 3d 339 (S.D.N.Y. 2017)..................................................................... 8

*Barnes v. YouTube, Inc.*,
  No. 25-cv-05901-VKD, 2026 U.S. Dist. LEXIS 30862 (N.D. Cal. Feb. 13, 2026) ................... 3

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
  448 F.3d 605 (2d Cir. 2006)....................................................................... 15, 18, 22

*Blanch v. Koons*,
  467 F.3d 244 (2d Cir. 2006)..................................................................................... 7

*Bouchat v. Baltimore Ravens*,
  737 F.3d 932 (4th Cir. 2013) ............................................................................ 8, 20

*Buckley v. American Constitutional Law Foundation, Inc.*,
  525 U.S. 182 (1999).................................................................................................. 5

*Bungie, Inc. v. Minor*,
  2024 U.S. Dist. LEXIS 39478 (W.D. Wash. Mar. 6, 2024) ....................................... 5

*Byrne v. BBC*,
  132 F. Supp. 2d 229 (S.D.N.Y. 2001).................................................................... 19

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994)........................................................................................... passim

*Capitol Records, Ltd. Liab. Co. v. Vimeo, Ltd. Liab. Co.*,
  826 F.3d 78 (2d Cir. 2016)...................................................................................... 3

*Columbia Ins. Co. v. seescandy.com*,
  185 F.R.D. 573 (N.D. Cal. 1999)........................................................................... 23

RANDAZZA | LEGAL GROUP

*Dendrite Intern., Inc. v. Doe No. 3*,
3 775 A.2d 756 (N.J. Super. Ct. App. Div. 2001) ..................................................... 23

*Dhillon v. Doe*,
2014 U.S. Dist. LEXIS 24676 (N.D. Cal. Feb. 25, 2014) ............................................ 10, 11, 19

*Fitzgerald v. CBS Broad., Inc.*,
491 F. Supp. 2d 177 (D. Mass. 2007) ...................................................................... 21

*Folsom v. Marsh*,
9 F. Cas. 342 (C.C.D. Mass. 1841) ......................................................................... 7

*Fox News Network, LLC v. Tveyes, Inc.*,
883 F.3d 169 (2d Cir. 2018) .................................................................. 8, 17, 19, 22

*Free Speech Coal., Inc. v. Paxton*,
95 F.4th 263 (5th Cir. 2024) .................................................................................. 5

*Hannley v. Mann*,
2023 U.S. Dist. LEXIS 40022 (C.D. Cal. Mar. 8, 2023) ............................................ 10

*Harper & Row, Publrs. v. Nation Enters.*,
471 U.S. 539, 105 S. Ct. 2218 (1985) ................................................................ 18, 19

*In re DMCA Section 512(h) Subpoena to YouTube (Google, Inc.)*,
581 F. Supp. 3d 509 (S.D.N.Y. Jan. 18, 2022) ....................................................... 3, 6

*In re Terrorist Attacks on September 11, 2001*,
538 F.3d 71 (2d Cir. 2008) ................................................................................... 18

*Infinity Broad. Corp. v. Kirkwood*,
150 F.3d 104 (2d Cir. 1998) .................................................................................. 21

*Kali Konangataa v. ABC*,
U.S. Dist. LEXIS 95812 (S.D.N.Y. June 21, 2017) ................................................... 8

*Katz v. Chevaldina*,
2014 U.S. Dist. LEXIS 88085 (S.D. Fla. June 17, 2014) ........................................... 11

*Kennedy v. Gish, Sherwood & Friends, Inc.*,
143 F. Supp. 3d 898 (E.D. Mo. 2015) ..................................................................... 21

*Korman v. Free Beacon LLC*,
2026 U.S. Dist. LEXIS 69029 (E.D. Va. Mar. 30, 2026) ........................................... 11

*Krechmer v. Tantaros*,
747 F. App'x 6 (2d Cir. 2018) ............................................................................... 21

v

*La Union Del Pueblo Entero v. Abbott*,
No. SA-21-CV-00844-XR, 2022 U.S. Dist. LEXIS 222064 (W.D. Tex. Dec. 9, 2022) .......... 24

*Lenz v. Universal Music Corp.*,
815 F.3d 1145 (9th Cir. 2016) ...................................................................................... 6, 25

*Malibu Media, LLC v. Doe*,
No. 15-cv-3147 (AJN), 2016 U.S. Dist. LEXIS 134478 (S.D.N.Y. Sep. 29, 2016) .................. 2

*Mango v. Buzzfeed, Inc.*,
970 F.3d 167 (2d Cir. 2020) ............................................................................................ 21

*Mattel Inc. v. Walking Mountain Prods.*,
353 F.3d 792 (9th Cir. 2003) ........................................................................................... 19

*MCM Grp. 22 LLC v. Perry*,
818 F. Supp. 3d 623 (S.D.N.Y. 2026) ............................................................................... 15

*Monge v. Maya Magazines*,
688 F.3d 1164 (9th Cir. 2012) ......................................................................................... 21

*N. Jersey Media Group, Inc. v. Jeanine Pirro & Fox News Network, LLC*,
74 F. Supp. 3d 605 (S.D.N.Y. Feb. 10, 2015) .................................................................. 21

*NXIVM Corp. v. Ross Inst.*,
364 F.3d 471 (2d Cir. 2004) ............................................................................................ 18

*Perry v. Schwarzeneggar*,
591 F.3d 1147 (9th Cir. 2009) ......................................................................................... 24

*Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs.*,
351 F.3d 1229 (2003) ........................................................................................................ 4

*Righthaven, LLC v. Hoehn*,
792 F. Supp. 2d 1138 (D. Nev. 2011) .............................................................................. 20

*S.A.R.L. Louis Feraud Int'l v. Viewfinder, Inc.*,
489 F.3d 474 (2d Cir. 2007) .............................................................................................. 7

*Sarl Louis Feraud Int'l v. Viewfinder Inc.*,
627 F. Supp. 2d 123 (S.D.N.Y. 2008) ............................................................................... 8

*Schwartzwald v. Oath Inc.*,
2020 U.S. Dist. LEXIS 165641 (S.D.N.Y. Sept. 10, 2020) ............................................. 21

*Sedlik v. Von Drachenberg*,
No. 24-3367, 2026 U.S. App. LEXIS 12 (9th Cir. Jan. 2, 2026) ...................................... 23

vi

*Shaykhoun v. Daily Mail*,
    2026 U.S. Dist. LEXIS 40950 (S.D.N.Y. Feb. 26, 2026) ........................................................ 16

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984) ............................................................................................................... 22

*Sony Music Entertainment Inc. v. Does* 1-40,
    326 F. Supp. 2d 556 (S.D.N.Y. 2004) ........................................................................... 6, 23, 25

*Talley v. California*,
    362 U.S. 60 (1960) ................................................................................................................... 5

*Thunder Studios, Inc. v. Kazal*,
    13 F.4th 736 (9th Cir. 2021) .................................................................................................... 5

*Time Inc. v. Bernard Geis Associates,*
    293 F.Supp. 130 (S.D.N.Y 1968) ........................................................................................... 19

*Weinberg v. Dirty World, LLC*,
    2017 U.S. Dist. LEXIS 221759 (C.D. Cal. July 27, 2017) ................................................. 12, 14

*Whiddon v. Buzzfeed, Inc.*,
    638 F. Supp. 3d 342 (S.D.N.Y. 2022) ..................................................................................... 16

*Worldwide Church of God v. Philadelphia Church of God, Inc.*,
    227 F.3d 1110 (9th Cir. 2000) ................................................................................................ 20

*Wright v. Warner Books, Inc.,*
    953 F.2d 731 (2d Cir. 1991) ..................................................................................................... 7

**STATUTES**

17 U.S.C. § 107 ............................................................................................................ 5, 7, 16, 18

17 U.S.C. § 1202 ................................................................................................................... 21

17 U.S.C. § 512 ................................................................................................................. passim

N.Y. Penal Law § 130.55 ............................................................................................................ 1

**OTHER AUTHORITIES**

Mohammad Shayan Ahmad, *'Yassified graphics' and uncanny faces: Gamers turn Nvidia's
    DLSS 5 reveal into a meme storm*, EURONEWS (03/19/2026) ................................................ 14

RANDAZZA | LEGAL GROUP

**RULES**

Fed. R. Civ. P. 26 ............................................................................................................. 3

Fed. R. Civ. P. 45 ....................................................................................................... 2, 3, 4

**RANDAZZA** | LEGAL GROUP

## 1.0   INTRODUCTION

Defendant Zhen Elizabeth Fong-Jones confessed to committing sexual abuse.  Defendant calls the assault a "consent accident."  *See* Compl. at ¶¶ 23–24.  Sexual contact without consent constitutes the crime of sexual abuse.  N.Y. Penal Law § 130.55.  "Consent accident" is not a thing.

This confession triggered significant public backlash.  For example, one commenter responded that Defendant's euphemistic reference to sexual assault was "a term used by abusers to gaslight victims."  *Id.* at ¶ 24.  In response to this form of criticism, Fong-Jones deleted the posts and attempted to scrub them from the internet, including availability through archival retrieval services.[1]  *Id.*  As part of this campaign, Fong-Jones has made repeated efforts to deplatform the Kiwi Farms website because this is where much of this criticism occurs.  *Id.* at ¶ 8.

Defendant has now taken to abusing the Copyright Act in order to silence critics.  First, Defendant threatened Plaintiff Lolcow, LLC, which operates the Kiwi Farms website, resulting in the instant declaratory judgment action.  Now, Defendant is targeting non-parties through the misuse of the DMCA § 512(h) subpoena process in order to invade their right to engage in anonymous speech.

Does 1-7 are all Kiwi Farms users who criticized Fong-Jones based on Defendant's perpetuating sexual assault or their subsequent attempts to avoid accountability.  To do so, each user reposted a photo depicting Fong-Jones and added their critical commentary, either explicitly in the form of words, through alterations to the image, or through capturing and reposting other social media posts that include Defendant's image.

---

[1] Defendant has not been successful.  *See, e.g.,* **Exhibit 11**, available at https://ghostarchive.org/archive/9lCuW (last accessed 06/08/2026).

1

RANDAZZA | LEGAL GROUP

On March 23, March 27, and April 2, Fong-Jones sought subpoenas ("the Subpoenas") to Lolcow, purportedly under 17 U.S.C. § 512(h), seeking the identities of Fong-Jones's critics, along with their physical addresses, IP addresses, and transactor information. (ECF Nos. 12, 14, & 16). Movant Does 1-7 are the subjects of the subsequently-issued subpoenas appearing at ECF Nos. 13 & 15.[2] Those subpoenas should be quashed because (1) the Subpoenas are inappropriate end runs around normal discovery procedures and impose an undue burden, (2) the Subpoenas are significantly moot as § 512(h) only authorized subpoenas for ongoing infringement, and (3) the Subpoenas are improper under *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010), and the First Amendment right to speak anonymously and because the purported infringements are all fair use. And, to the extent applicable, Movants further incorporate by reference and advance the arguments raised by Plaintiff in its contemporaneous motion to quash (ECF No. 30).

## 2.0    ARGUMENT

A court must quash or modify a subpoena that, inter alia, "requires disclosure of privileged or other protected matter, if no exception or waiver applies; or . . . subjects a person to undue burden." *See* Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv). Moreover, "[t]he Second Circuit has recognized that an individual may challenge a subpoena directed at his ISP in order to preserve his anonymity." *Malibu Media, LLC v. Doe*, No. 15-cv-3147 (AJN), 2016 U.S. Dist. LEXIS 134478, at *4-5 (S.D.N.Y. Sep. 29, 2016) citing *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir.

---

[2] As set forth in the notice of appearance by Movants' counsel (ECF No. 21), Doe 1 is the Kiwi Farms user with the handle "3MMA," Doe 2 is "Sexy Senior Citizen," Doe 3 is "Diggus Bickus," Doe 4 is "Teriyaki Burns," Doe 5 is "Dread First," Doe 6 is "The Mass Shooter Ron Soye," and Doe 7 is "GettrGrifter". All Movants do not stand in the shoes of the other three subject, "None," "Lollardy," and "Taquito," and undersigned counsel do not represent them nor make arguments specific to those users, Movants would recommend the Court undertake a similar analysis of the posts giving rise to the subpoena at ECF No. 17, as Movants do not wish for those users to suffer Defendant's abuses merely because they are not represented here.

RANDAZZA | LEGAL GROUP

2010).  Lolcow, which operates the Kiwi Farms website, is an ISP (*compare Capitol Records, Ltd. Liab. Co. v. Vimeo, Ltd. Liab. Co.*, 826 F.3d 78, 81 (2d Cir. 2016)) and Movants are seeking to preserve their anonymity.  For the reasons set forth below, the Subpoenas should be quashed.

### 2.1     Defendant's Subpoenas are an Improper End Run Around Normal Discovery

Defendant cannot skirt the ordinary constraints on discovery through a Section 512(h) subpoena.  The Digital Millennium Copyright Act provides a subpoena process for copyright holders "to a service provider for identification of an alleged infringer[.]"  17 U.S.C. § 512(h).  Section 512(h) is constrained; subpoenas "shall be governed to the greatest extent practicable by" the Federal Rules of Civil Procedure pertaining to subpoenas.  *Id.* § 512(h)(6).

Defendant chose to seek issuance of the subpoenas through this case.  Under Fed. R. Civ. P. 26(d), a "party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)" unless certain exceptions apply, none of which are present here.  Nor has Defendant moved for leave to take early discovery.  Defendant provided no justification for ignoring the procedural requirements of Rule 26(d) and the statute offers none.  Simply put, the subpoenas should be quashed as premature.

However, even if they were timely, they should be quashed.  Subpoenas under Section 512(h) are also governed by Fed. R. Civ. P. 45.  *See Barnes v. YouTube, Inc.*, No. 25-cv-05901-VKD, 2026 U.S. Dist. LEXIS 30862, at *4 (N.D. Cal. Feb. 13, 2026) (collecting cases).  Rule 45 provides that subpoenas can be quashed on the basis that they impose an "undue burden" or where it "requires disclosure of privileged or other protected matter" and this applies to Section 512(h) subpoenas.  *See In re DMCA Section 512(h) Subpoena to YouTube (Google, Inc.)*, 581 F. Supp. 3d 509, 515 (S.D.N.Y. Jan. 18, 2022).  "To the extent that anonymity is protected by the First Amendment, a court should quash or modify a subpoena designed to breach anonymity." *Arista*

RANDAZZA | LEGAL GROUP

*Recs., supra* at 118. (citing Fed. R. Civ. P. 45(c)(3)(A).  As discussed below, the Subpoenas require disclosure of the anonymous Movants' personally identifying information and unduly burden their right to engage in anonymous speech.

Defendant is abusing Section 512(h) to obtain information to which Fong-Jones is not entitled.  Movants are entitled to remain anonymous.  This Court should not permit Section 512(h) to become a censorial tool that ordinary discovery would not suffer.

### 2.2    Defendant's Subpoenas are Significantly Moot

The Subpoenas should be quashed because they are significantly moot.  The DMCA imposes strict procedural requirements on a purported rightsholder seeking to unmask an alleged infringer.  *See* 17 U.S.C. §§ 512(c)(3)(A) & (h)(2). And when a rightsholder subpoenas a user's identifying information *after* the allegedly infringing material has been removed, Section 512 does not permit piercing through their anonymity.  *See Maximized Living, Inc. v. Google, Inc.*, 2011 U.S. Dist. LEXIS 147486, at *13-14 (N.D. Cal. Dec. 22, 2011).  More specifically, "512(h) does not authorize issuance of a subpoena to obtain the identifying information as to past infringement in light of the plain language and purpose of the DMCA."  *Id.*  The reason is because Section 512(h) is part of the overall notice-and-takedown regime of Section 512, and where there is no ongoing infringement, there is nothing to be "removed" nor have access "disabled."  *See Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs.*, 351 F.3d 1229, 1235 (2003).  Section 512's requirements are phrased in the present tense; the statute does not permit rightsholders to reach back in time and unmask users for their past conduct.

Applied here, three of the Movants' posts (those of Sexy Senior Citizen, Diggus Bickus, and GettrGrifter) are no longer live on Kiwi Farms. *See* Decl. of Robert K. Fensom, at ¶¶ 3–5, attached as **Exhibit 1**; *see also* **Exhibits 12, 13, & 14**.  The alleged infringements by Sexy Senior

---

4

Citizen and Diggus Bickus were removed per Defendant's March 20, 2026, takedown notice, and GettrGrifter's per the March 25, 2026, takedown notice, both of which pre-date the respective Subpoenas.[3] *See* **Exhibits 15 & 16**.  For each of these Movants, Defendant cannot show that there was any remaining material "claimed to be infringing."  Thus, the Subpoenas seeking those users' information should be quashed.

### 2.3    The Subpoenas Invade Movants' Freedom of Speech and None of the Alleged Infringements are Actionable Under the Fair Use Doctrine[4]

The right to speak anonymously is core to our nation's tradition of free speech.  *See e.g. Buckley v. American Constitutional Law Foundation, Inc.,* 525 U.S. 182, 199–200 (1999). "Anonymous pamphlets, leaflets, brochures and even books have played an important role in the progress of mankind."  *Talley v. California*, 362 U.S. 60, 64 (1960).  The Second Circuit has recognized that "to the extent that anonymity is protected by the First Amendment, a court should quash or modify a subpoena designed to breach anonymity."  *Arista Recs.*, 604 F.3d at 119.  When confronting subpoenas that will undermine this fundamental right to anonymous speech, the Second Circuit uses a five-part test for determining whether to grant a motion to quash a subpoena

---

[3] As set forth below, there was no infringement as it was all fair use.  Defendant and the agent who signed the takedown notices are, therefore, liable to those Movants under 17 U.S.C. § 512(f).  *See, e.g., Bungie, Inc. v. Minor,* 2024 U.S. Dist. LEXIS 39478, at *5-6 (W.D. Wash. Mar. 6, 2024).

[4] Defendants argued in a meet and confer that if any Movants are non-residents/non-citizens, then the First Amendment does not protect their speech interests. Movants believe this is based on a misreading of *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 591 U.S. 430, 434 (2020) (stating that "foreign citizens outside the United States" cannot "assert rights under the U.S. Constitution.")  However, this does not apply to online speech hosted in American territories or received in by citizen listeners.  *See Thunder Studios, Inc. v. Kazal*, 13 F.4th 736, 744 (9th Cir. 2021)(protecting speech "directed at and received by California residents"); *see also Free Speech Coal., Inc. v. Paxton*, 95 F.4th 263, 306 (5th Cir. 2024) ("But AOSI II has no bite in this case where 'the recipients of [Plaintiffs'] speech and speech-related conduct' are in the United States.")(Higginbotham, J., Concurring in Part and Dissenting in Part).  Here, Lolcow is organized in West Virginia and its website servers are all housed in the United States. *See* Compl. At ¶¶5–7. Therefore, the First Amendment protects all Movants in full force.  Additionally, the protections for statutory Fair Use (17 U.S.C. § 107) contain no territorial limitation.

RANDAZZA | LEGAL GROUP

to preserve the objecting party's anonymity. *See id.* (adopting test from *Sony Music Entertainment Inc. v. Does* 1-40, 326 F. Supp. 2d 556, 564–65 (S.D.N.Y. 2004)). The factors are:

> (1) [the] concrete[ness of the plaintiff's] showing of a prima facie claim of actionable harm, . . . (2) [the] specificity of the discovery request, . . . (3) the absence of alternative means to obtain the subpoenaed information, . . . (4) [the] need for the subpoenaed information to advance the claim, . . . and (5) the [objecting] party's expectation of privacy.

*Arista Recs., supra* at 119 (alterations in original) (citation omitted). However, when a movant can establish a fair use defense, then the "subpoena must be quashed" regardless of the application of the remaining *Arista* factors. *See In re DMCA Section 512(h) Subpoena to YouTube (Google, Inc.)*, 581 F. Supp. 3d 509, 517-18 (S.D.N.Y. 2022) (internal quotation marks removed). In other words, 17 U.S.C. § 512(h) does not authorize a subpoena where the movant establishes fair use. *See id.* at 518 (quashing 512(h) subpoena).

Here, under *Arista Recs.*, factor one requires quashing the subpoenas. To the extent that this Court decides to reach the remaining factors, no factor weighs so heavily as to resurrect Defendant's non-starter claim.

### 2.4    Movants' Posts are Non-Commercial, Critical, and Transformative Fair Use

Each purported infringement by Movants constitutes Fair Use. Even assuming Defendant could meet the burden of making a *prima facie* claim, Movants can "defeat a *prima facie* showing of infringement, however, by proving that the doctrine of fair use permits his or her employment of the plaintiff's work." *Id.* at 517. When a work is Fair Use, then its inclusion of copyrighted material is "not just excused by the law, it is wholly authorized." *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1151 (9th Cir. 2016).

Under the Copyright Act, "the fair use of a copyrighted work, including such use by reproduction … for purposes such as criticism, comment, [or] news reporting… is not an

6

infringement of copyright." 17 U.S.C. § 107.[5] There are four factors should be considered in determining whether the use of a work is fair use:

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
(2) the nature of the copyrighted work;
(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
(4) the effect of the use upon the potential market for or value of the copyrighted work.

*Id*. As these factors indicate, "the determination of fair use is an open-ended and context-sensitive inquiry." *Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006). These factors are not viewed "in isolation, one from another. All are to be explored, and the results weighed together, in light of the purposes of copyright." *Campbell v. Acuff-Rose Music, Inc*., 510 U.S. 569, 578 (1994).

### 2.5    Under Factor 1, the Purpose and Character of Each Post are Transformative

The Second Circuit has recognized that "there is a strong presumption that factor one favors the [alleged infringer] if the allegedly infringing work fits the description of uses described in section 107." *Wright v. Warner Books, Inc.,* 953 F.2d 731, 736 (2d Cir. 1991). Among these enumerated permitted uses are "criticism" and "comment." *See* 17 U.S.C. § 107.

When analyzing the first factor, courts focus on "whether the new work merely 'supersede[s] the objects' of the original creation or instead adds something new, with a further purpose or different character." *Campbell, supra* at 579 (*quoting Folsom v. Marsh*, 9 F. Cas. 342, 348 (C.C.D. Mass. 1841)) (internal citation omitted). "[T]he primary inquiry is whether the use 'communicates something new and different from the original or [otherwise] expands its utility,' that is, whether the use is 'transformative.'" *Fox News Network, LLC v. Tveyes, Inc*., 883 F.3d

---

[5] First Amendment protected speech is vindicated through the fair use doctrine. *See S.A.R.L. Louis Feraud Int'l v. Viewfinder, Inc.*, 489 F.3d 474, 482 (2d Cir. 2007).

RANDAZZA | LEGAL GROUP

169, 176 (2d Cir. 2018) (*quoting Authors Guild v. Google, Inc.*, 804 F.3d 202, 214 (2d Cir. 2015)). "'Although . . . transformative use is not absolutely necessary for a finding of fair use, . . . [transformative] works . . . lie at the heart of [the fair use doctrine . . . .'" *Id.* (*quoting Campbell*, 510 U.S. at 579). While courts have declined to find a transformative use when the defendant has 'done no more than find a new way to exploit the creative virtues of the original work,' . . . courts have found a secondary use to be transformative when it is 'plainly different from the original purpose for which [the copyrighted work was] created' — even where a secondary user has made an exact replication of a copyrighted image." *Sarl Louis Feraud Int'l v. Viewfinder Inc.,* 627 F. Supp. 2d 123, 128-29 (S.D.N.Y. 2008) (citations omitted).

Commentary about a work "might fairly display a screenshot or clip … to illustrate what all the fuss is about." *Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339, 352 (S.D.N.Y. 2017) *citing Kali Konangataa v. ABC*, U.S. Dist. LEXIS 95812 at *1 (S.D.N.Y. June 21, 2017). In a case that is directly applicable, the Fourth Circuit held it was transformative to use the Baltimore Ravens logo to identify the team while discussing the team in a historical context. *Bouchat v. Baltimore Ravens*, 737 F.3d 932, 941 (4th Cir. 2013) (transformative as use of Baltimore Ravens' logo was to "tell new stories and not simply rehash the seasons"). The headshot Fong-Jones uses as her social media profile picture is the functional equivalent of her logo.

Further, nothing in *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023) changed this analysis as applied to works that have a "different character" and to that end adapts the original work to a new purpose. Indeed, the *Warhol* Court recognized that "[c]riticism of a work, for instance, ordinarily does not supersede the objects of, or supplant, the work. Rather, it uses the work to serve a different end." 598 U.S. at 528. And *Warhol* reaffirmed *Campbell's* understanding that copying is expected for effective criticism because of the justified

8

need to "conjure up" the original.  *Id.* at 532 (quoting *Campbell*, 510 U.S. at 588).  *Warhol* even recognized that exact copies may still constitute Fair Use because of their critical commentary. *See Id.* at 538.  For example, Warhol's depictions of Campbell Soup Cans served a different purpose and commented on consumerism.  *Id.* at 539–40 (observing the purposes to be "orthogonal").

Here, each of the allegedly infringing posts is Fair Use because each has a different purpose and character from the original work. The original work depicts Defendant in a professional and light-hearted manner:[6]



In contrast, each of the allegedly infringing posts is "orthogonal" to Fong-Jones's self-advertisement, evidencing a transformed purpose through additional commentary and/or alterations to the original work.  In doing so, each work is critical of Defendant and Defendant as depicted in the original work.  And, as all were posted on Kiwi Farms, they are all non-commercial uses.

---

[6] This is the image from the link identified at Defendant's letter (ECF No. 1-1), appearing at **Exhibit 9**; https://kusklaw.sharefile.com/share/view/s8f7ac74eb9344bad9a991059b4c38ab8/fo e2eb77-87cb-414a-895f-6afb36adb1f0 (last visited June 8, 2026).

RANDAZZA | LEGAL GROUP

### 2.5.1 The Posts Made by Does #1 ("3MMA") and #7, ("GettrGrifter") are Transformative Because they Critique Defendant based on Defendant's Minimization of Sexual Assault

Doe #1's post, attached as **Exhibit 2**, and Doe #7's post, attached as **Exhibit 3**, are substantively identical, containing the following:



Both posts use a cropped version of the image, with a modified color-palette, depicting Defendant along with Defendant's since-deleted "consent accident" phrasing.  The contrast in purpose is self-evident. Whereas the original work tends to portray a warm, professional image, the adapted work is colder and reflects criticism based on Defendant's flippant and dismissive description of past sexual assault. Courts regularly find an allegedly infringing work to be Fair Use when the original work was created to positively depict an individual and the subsequent use criticizes the depicted individual. *See e.g., Dhillon v. Doe,* 2014 U.S. Dist. LEXIS 24676, at *12-15 (N.D. Cal. Feb. 25, 2014) (use of plaintiff's copyrighted headshot for an article criticizing plaintiff's views was "paradigmatic fair use" and was "transformative because it served the purpose of criticism, rather than identification"); *Hannley v. Mann*, 2023 U.S. Dist. LEXIS 40022, *13-14 (C.D. Cal. Mar. 8, 2023) (using plaintiff's copyrighted photo on website and social media accounts to criticize plaintiff by identifying plaintiff's bankruptcies and claiming that he "Loves Ripping Old Men Off" was transformative "because they were used for negative criticism, and not identification and positive development of Edalat's internet presence"); *Katz v. Chevaldina*, 2014 U.S. Dist. LEXIS

RANDAZZA | LEGAL GROUP

88085, *18-19 (S.D. Fla. June 17, 2014) (finding fair use where defendant cropped plaintiff's copyrighted photo into unflattering images with critical captions was fair use because it was used to criticize Katz). *Dhillon* remains good law, even after *Warhol;* it was cited favorably earlier this year relative to the Washington Free Beacon's fair use of Congresswoman Alexandria Ocasio-Cortez's headshot to criticize the congresswoman. *See Korman v. Free Beacon LLC*, 2026 U.S. Dist. LEXIS 69029, at *14-18 (E.D. Va. Mar. 30, 2026).

These Movants' criticism extends both to the original work and the broader context in which the work is used through its juxtaposition of Defendant's alarming statements with the professional photograph. As the Supreme Court noted, "context is everything[.]" *Campbell*, 510 U.S. at 589. While the Court can review the posts in their entirety, Does 1 & 7 did not merely post the modified image. Both Movants surrounded the image with paragraphs of written commentary about Defendant. Further, the posts of Does 1 & 7 (and all Movants) appeared as part of the collective work which constitutes the pages-long thread of commentary about Defendant.

### 2.5.2 The Post Made by Doe #2, User "Sexy Senior Citizen" is Transformative Because it Criticizes the Original Work by Modifying Elements Present in the Original Work

Doe #2's post, attached as **Exhibit 4**, depicts Defendant and the original work with an exaggerated and artificial smile:



**RANDAZZA** | LEGAL GROUP

And there is specific commentary on the photo, referring to the use of a "filter" or being "touched [] up", with Doe 2 then saying "I can do that too" and calling it "Nightmare fuel" with a caption "Have a happy consent accident!" Here, the works differ in purpose because the original work is intended to serve as a professional and happy depiction of the Defendant. In contrast, Doe #2's work criticizes the professional portrayal by over-emphasizing features. While the original work serves to identify Defendant for professional purposes, the edited rendition is unlikely to be used for such purposes. Even isolating the analysis to just Doe #2's criticism of the Original Work for a moment, courts have regularly found transformation based on critiques of a subject's physical appearance when it contrasts with the copyrighted work's purpose. *See e.g.*, *Weinberg v. Dirty World, LLC*, 2017 U.S. Dist. LEXIS 221759 (C.D. Cal. July 27, 2017). And here, the edited version goes beyond just a critique of Defendant's appearance.

The photo was published in a thread with existing critical commentary. Doe #2's post also included their view that the Original Work had a "filter or [someone] it touched up." The modified image thus directly responds to and critiques the original image by exaggerating the purported use of Photoshop to improve the Original Work. Further, the edited version participated in ongoing discussion on Defendant's past conduct. Just as "consent accident" is an uncanny and disturbing gloss on sexual assault, so too is Doe # 2's rendition of Defendant's professional photograph. By editing the Defendant's original image, Doe #2 created work that added new expression to serve a critical purpose focused both on the Defendant's appearance and past actions. And, as with the others, it is part of the overall discussion of Defendant's malfeasance.

12

### 2.5.3 The Post Made by Doe #3, User "Diggus Bikus" is Transformative Because it Criticizes the Original Work by Removing Elements Present in the Original Work

Doe #3's post, attached as **Exhibit 5**, depicts Defendant in the Original Work but with the background further cropped out to place additional emphasis on Defendant's facial features:



In doing so, the work evidences a markedly different purpose than the Original Work. While the original was intended to portray the Defendant in a positive light through choices in lighting, angles, and placement, the edited work removes these contextual cues and places emphasis solely on the Defendant's appearance. Again, this work was created in the context of posts discussing and critiquing Defendant for past sexual assault and subsequent attempts to downplay its significance. The removal of the original work's artistic features serves to participate in this discussion by forcing the viewer to directly confront the Defendant's image.

Further, the post was made in addition to Doe #3's commentary on Defendant's past sexual misconduct, discussing Defendant's "Consent Accident." As the *Warhol* Court noted, even when a work "precisely replicates" a copyrighted work, the work may still be Fair Use if it possesses a new purpose, for example, offering new commentary. 598 U.S. at 538. Here, Doe # 3's use removes the artistic portions of the original work that the author viewed as inconsistent with Defendant's past actions and cast the Defendant in a more negative light.

13

### 2.5.4    The Post Made by Doe #4, User "Teriyakiburns" is Transformative Because it Criticizes the Original Work by Contrasting the Image with Additional Material

Doe #4's post, attached as **Exhibit 6**, depicts the heavily-cropped Defendant next to a haggard woman with stretched-out skin from the movie *Brazil* (1985). The comparison is accompanied by the phrases "DLSS 5 Off" and "DLSS 5 On."[7] These phrases are popularly used online in memes to portray exaggerated before-and-after pictures.



Here, Doe #4 used the comparison to criticize Defendant's physical appearance. In doing so, Doe #4 critiqued the original image and Defendant's characterization of the image. Again, courts have regularly found criticism of physical appearance to differ in purpose and be sufficiently transformative. *See e.g.*, *Weinberg, supra*.

Further, this use is a collage (although all uses may more properly be deemed part of the collective collage *i.e.* the Kiwi Farms thread). The Second Circuit has found collages that

---

[7] The acronym "DLSS" refers to Deep Learning Super Sampling, which is an image-enhancing technology based on generative artificial intelligence. *See* Mohammad Shayan Ahmad, *'Yassified graphics' and uncanny faces: Gamers turn Nvidia's DLSS 5 reveal into a meme storm*, EuroNews (03/19/2026), available at https://www.euronews.com/next/2026/03/19/yassified-graphics-and-uncanny-faces-gamers-turn-nvidias-dlss-5-reveal-into-a-meme-storm.

RANDAZZA | LEGAL GROUP

incorporate portions of copyrighted material to be transformative when they form "the copyrighted work is used as 'raw material,' in furtherance of distinct creative or communicative objectives." *Blanch*, 467 F.3d, at 253.  *See also, MCM Grp. 22 LLC v. Perry*, 818 F. Supp. 3d 623, 631 (S.D.N.Y. 2026) (recognizing that photoshopped image depicting a woman in Forbes juxtaposed with an image of that same woman from a pornographic film was Fair Use because "a reasonable observer would understand the [collage] as commentary.").

Here, Doe #4 used the Original Work and the comparative image as a commentary on Defendant's status as someone who has undergone significant plastic surgery and paired the post with additional commentary on Defendant's surgical status. This commentary via collage goes to the heart of contemporary debates on transgender issues and uses the Original Work to accomplish Doe # 4's intent on voicing their view on the subject.

And even if one were to remove the comparative image, the use of the image lacks any superseding use.  To make the comparison, Doe #4 cropped the Original Work.  *See Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 609 (2d Cir. 2006) (noting that first factor favored Fair Use, in part, because the subsequent work displayed the images in "significantly reduced form.")

        **2.5.5**    **The Post Made by Doe #5, User "Dread First," is Transformative Because it Adds Material to the Original Work and has a Different Purpose**

Doe #5's post, attached as **Exhibit 7**, captured Defendant's image in the context of a LinkedIn post advertising a podcast episode featuring Defendant, wherein Defendant discusses emerging technological developments.

RANDAZZA | LEGAL GROUP



To the extent that Doe #5's cropped image incorporates copyrighted material from Defendant, it did so in furtherance of ongoing debates and conversations about Defendant.  Whereas the Original Work's purpose was to identify Defendant, Doe #5 used the image to identify activities that the Defendant was engaged in and to cast them in a negative light.

Doe #5's post and its reference to Defendant's continued involvement in public spheres meets both the criticism and news reporting categories under § 107. Doe # 5's additions to the Original Work fit squarely in *Warhol*'s acknowledgment that a "use that has a distinct purpose is justified because it furthers the goal of copyright," one of which is to "enrich[] public knowledge." *Warhol*, 598 U.S. at 531 (quoting *Authors Guild v. Google, Inc.*, 804 F.3d 202, 214 (2d Cir. 2015). Doe #5's post furthers knowledge by disseminating a broader view of Defendant's activities in light of the ongoing controversy with Defendant's self-admitted sexual assault. Courts regularly recognize the Fair Use in the context of both news reporting and social media posts depicting ongoing public engagement with a copyrighted work, especially as to copying social media posts. *See Shaykhoun v. Daily Mail*, 2026 U.S. Dist. LEXIS 40950, at *15-16 (S.D.N.Y. Feb. 26, 2026); *see also, Whiddon v. Buzzfeed, Inc.*, 638 F. Supp. 3d 342, 352 (S.D.N.Y. 2022)("When an individual's decision to disseminate an Instagram post is the very thing the article is reporting on, the use of the Instagram post and its copyrighted material in the reporting has been deemed sufficiently transformative to support a fair use defense." (cleaned up)).

16

**2.5.6** **The Post Made by Doe #6, User "The Mass Shooter Ron Soye" is Transformative Because it Adds Material to the Original Work and has a Different Purpose**

Doe #6's post, attached as **Exhibit 8**, captured Defendant's image in the context of a LinkedIn discussion where Defendant posted the Original Work and received positive feedback from connections:



Like Doe # 5, the reposting of a social media post for commentary and criticism is fair use. To the extent that Doe #6's post includes the allegedly copyrighted image, the purpose of reposting the LinkedIn thread and the image was to further contextualize the Original Work. Again, while the original's purpose was to professionally identify Defendant, Doe # 6's use was to provide critical commentary and spread knowledge as to how other groups were responding to Defendant's post.

**2.6** **Under Factor 1's Consideration of Commerciality and Bad-Faith, Each Movant's Conduct Favors a Fair Use Finding.**

In addition to transformative purpose, under Factor 1, courts also consider commercialism and bad faith. *Fox News Network*, 883 F.3d at 176. Notably, "the more transformative the work,

17

RANDAZZA | LEGAL GROUP

the less will be the significance of the other factors, like commercialism, that may weigh against a finding of fair use." *Campbell*, 510 U.S. at 579. The question is "whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row, Publrs. v. Nation Enters.*, 471 U.S. 539, 562, 105 S. Ct. 2218, 2231 (1985). And, as to bad faith, "while the good or bad faith of a defendant generally should be considered, it generally contributes little to fair use analysis." *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 479 n.2 (2d Cir. 2004).

Here, none of the Movants posted their content with the goal of reaping financial benefits. Indeed, it's not clear how any of the users could have profited from the posts. Kiwi Farms, unlike several other social media platforms, does not have a built-in revenue sharing system—there are no advertisements. Even if Movants' posts included explicit or implicit accompanying requests for money (they don't), donations are not commercial activity as they "are not part of the trade and commerce engaged in by a merchant in the marketplace." *In re Terrorist Attacks on September 11, 2001*, 538 F.3d 71, 92 (2d Cir. 2008) (citation and quotation marks omitted).

Even if the posts were, somehow, commercial, the Second Circuit has noted that "[t]he Supreme Court in *Campbell* rejected the notion that the commercial nature of the use could by itself be a dispositive consideration. The *Campbell* opinion observes that nearly all of the illustrative uses listed in the preamble paragraph of § 107, including news reporting, comment, criticism, teaching, scholarship, and research are generally conducted for profit and that Congress could not have intended a rule that commercial uses are presumptively unfair." *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 477-478 (2d Cir. 2004) (cleaned up). None of the movants were selling their posts. To the extent their use could even be characterized as commercial, it is of a kind recognized to be proper in *NXIVM* or *Bill Graham*.

---

RANDAZZA | LEGAL GROUP

Neither is there any bad faith. *Contrast Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 540 (1985) ("Fair use presupposes good faith" and noting that defendant had knowingly disseminated stolen, unpublished materials); *Time Inc. v. Bernard Geis Associates,* 293 F.Supp. 130, 146 (S.D.N.Y 1968) (infringer unsuccessfully sought Fair Use protections after personally stealing copyrighted material). Here, there is no suggestion that any of the movants has acted inappropriately with regard to their access to the Original Work or otherwise engaged in bad-faith conduct—the digital image and posts were publicly available to copy. Thus, in weighing these considerations, the transformative use, lack of bad faith and even the possibility of commerciality, the first factor cuts in favor of a fair use finding.

**2.7    Under Factor 2, the Nature of the Original Work Favors Fair Use because it was Previously Published and is not a Creative Work at the Core of Copyright's Protection**

Under the second factor, whether the work was previously published and whether it is informational or creative is considered. *See Byrne v. BBC*, 132 F. Supp. 2d 229, 235 (S.D.N.Y. 2001) ("Previously published works . . . qualify for 'far less protection' against fair use."); *Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 803 (9th Cir. 2003) ("creative works are 'closer to the core of intended copyright protection' than informational and functional works."). Yet, "[t]his factor 'has rarely played a significant role in the determination of a fair use dispute.'" *Fox News Network*, 883 F.3d at 178 (*quoting Authors Guild*, 804 F.3d at 220). Here, the work is not creative—it is a headshot, making it an informational and functional work. *See Dhillon,* 2014 U.S. Dist. LEXIS 24676, at *15 (holding that "the headshot photo was intended to be more informational than creative.").

19

**RANDAZZA** | LEGAL GROUP

**2.8** **Under Factor 3, The Amount and Substantiality of the Portion Used in Relation to the Copyrighted Work as a Whole Favors a Fair Use Finding**

Under the Third Factor, courts are to consider the quantity and quality taken from the original work, as contextualized by the subsequent work's new purpose. *Campbell,* 510 U.S. at 586–587. Under this factor, even copying of an entire work may be fair use when it was "reasonably appropriate to achieve the copier's transformative purpose…" *Authors Guild v. Google, Inc.*, 804 F.3d 202, 221 (2d Cir. 2015). The Second Circuit has held that "the clear implication of the third factor is that a finding of fair use is more likely when small amounts, or less important passages, are copied than when the copying is extensive, or encompasses the most important parts of the original." *Id.* Indeed, in *Authors Guild*, the court recognized that even significant amounts of copying are not "substantial" under the factor if the copy "is in a form that communicates little of the sense of the original." *Id.* at 223. Notably, "copying of an entire copyrighted work has been deemed justified where the purpose of the new work differs from the original." *Righthaven, LLC v. Hoehn*, 792 F. Supp. 2d 1138, 1150 (D. Nev. 2011) *rev'd on other grounds* 716 F.3d 1166 (9th Cir. 2013); *see also Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1118 (9th Cir. 2000). Again, *Bouchat* is on point. 737 F.3d at 943 ("Though the NFL has used Bouchat's work in its entirety, the transformativeness of the use and the character of Bouchat's work lead us to give very little weight to this factor. It would be senseless to permit the NFL to use the Flying B logo for factual, historical purposes, but permit it to show only a half, or two-thirds of it"). One must by necessity use at least the entirety of Defendant's face to criticize Defendant. Yet, none of the movants used the entire photograph—all utilized cropped versions.

With regard to infringement claims involving photographs, courts have recognized that cropped images are one way a subsequent creator can limit their reliance on the rightsholder's

RANDAZZA | LEGAL GROUP

work and thus cropping is one consideration that favors a fair use finding. *See Monge v. Maya Magazines*, 688 F.3d 1164, 1178-79 (9th Cir. 2012); *Schwartzwald v. Oath Inc.*, 2020 U.S. Dist. LEXIS 165641, at \*24-25 (S.D.N.Y. Sept. 10, 2020).[8]

Moreover, this factor weighs less for a photograph "'where all or most of the work often must be used in order to preserve any meaning at all — than a work such as a text or musical composition, where bits and pieces can be excerpted without losing all value.'" *N. Jersey Media Group, Inc. v. Jeanine Pirro & Fox News Network, LLC*, 74 F. Supp. 3d 605, 621 (S.D.N.Y. Feb. 10, 2015) (*quoting Fitzgerald v. CBS Broad., Inc.*, 491 F. Supp. 2d 177, 188 (D. Mass. 2007)).

Thus, this factor is, at worst, neutral, as "'no more [of the work] was taken than necessary.'" *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 110 (2d Cir. 1998) (*quoting Campbell*, 510 U.S. at 589).

---

[8] Defendant also claimed to Movants that this cropping gives rise to a claim under 17 U.S.C. § 1202 for intentional removal of or alteration of copyright management information (CMI) with regard to the subset Movants who may have cropped the Original Work. This is a nonstarter.

First, there is no CMI on the original work at the link provided by Defendant, so it cannot be alleged that any Movant removed CMI. Second, "Section 1202(b)(3) contains a so-called 'double-scienter' requirement: the defendant who distributed improperly attributed copyrighted material must have actual knowledge that CMI 'has been removed or altered without authority of the copyright owner or the law,' as well as actual or constructive knowledge that such distribution 'will induce, enable, facilitate, or conceal an infringement.'" *Mango v. Buzzfeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020); *see also Krechmer v. Tantaros,* 747 F. App'x 6, 9 (2d Cir. 2018). Defendant cannot plausibly allege that any Movant sought to induce, enable, facilitate, or conceal an infringement, let alone did the cropping with such intent. Third, weaponizing § 1202 to penalize considerations that weigh in favor of fair use would corrupt Congress' carefully balanced scheme under § 107 to protect the First Amendment. And under the plain text, liability cannot attach to works deemed fair use. § 1202 ("No person shall, without the authority of the copyright owner *or the law*…") (emphasis added). *See also*, *Kennedy v. Gish, Sherwood & Friends, Inc.,* 143 F. Supp. 3d 898, 914 (E.D. Mo. 2015) (recognizing that the "DMCA expressly states its operation is not intended to affect fair use rights"). Indeed, if it were otherwise, a rightsholder could fortify their work against any fair use by including an aggressively large CMI on their work.

RANDAZZA | LEGAL GROUP

**2.9    Under Factor 4, Each Subpoena's Respondent's Use has no Impact on the Original Work's Market and therefore the Factor Favors a Fair Use Finding**

The fourth factor "is 'undoubtedly the single most important element of fair use,' *Fox News Network*, 883 F.3d at 179 (*quoting Harper & Row v. Nation at* 566), and focuses on "'whether the copy brings to the marketplace a competing substitute for the original, or its derivative, so as to deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original." *Id*. (*quoting Authors Guild*, 804 F.3d at 223). This factor requires consideration of "'not only the . . . market harm caused by the particular actions of the alleged infringer,' but also the market harm that would result from 'unrestricted and widespread conduct of the [same] sort.'" *Id*. (*quoting Campbell*, 510 U.S. at 590 (internal quotation marks and alteration omitted)).

None of Movants' uses supersede the original's use. Any market for the original work is not harmed by the creation of a rendition that intentionally lacks significant elements of the artistic skill present in the original and loses the original's pixel count. *See Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 609 (2d Cir. 2006) (noting that first factor favored Fair Use, in part, because the subsequent work displayed the images in "significantly reduced form."

In *Sony Corp. of Am. v. Universal City Studios, Inc*., 464 U.S. 417, 451 (1984), the Supreme Court stated that "[a] challenge to a noncommercial use of a copyrighted work requires proof either that the particular use is harmful, or that if it should become widespread, it would adversely affect the potential market for the copyrighted work." In *Campbell*, the Court clarified that this presumption of market harm for commercial uses only applies where the use of the work is not transformative. *Campbell*, 510 U.S. at 591 ("No 'presumption' or inference of market harm that might find support in *Sony* is applicable to a case involving something beyond mere duplication for commercial purposes.").

---

22

Here, there is no presumption of market harm: the uses were non-commercial and transformative. Defendant has not claimed the image is even for sale. Instead, Defendant has freely published the photo on various social media platforms. And even if Defendant could produce evidence that the photo was licensable, none of Movants' posts are likely to act as a market substitute. To the contrary, "it is unlikely that someone would otherwise license the photograph would instead" work off the substandard version. *Sedlik v. Von Drachenberg*, No. 24-3367, 2026 U.S. App. LEXIS 12, at *6 (9th Cir. Jan. 2, 2026) 2026 WL 18912, at *2 (9th Cir. Jan. 2, 2026). Anyone who wanted the photo could simply download it from Defendant's social media profiles. Defendant's lack of any financial harm weighs strongly in favor of a fair use finding.

****

In sum, each of Movants' uses constitutes fair use and the subpoena should be quashed on that basis.

### 2.10   Under the Second *Arista Record* Factor, Defendant's Subpoena Requests Are Insufficiently Specific

Defendant has issued subpoenas targeting the seven Movants, for each individual seeking personal information. Although the subpoenas identify the particular uses, they do not satisfy the purpose of the specificity requirement. In setting forth this factor, the Court in *Sony Music Entm't Inc. v. Doe*, 326 F. Supp. 2d at 564-65, cited to *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578 (N.D. Cal. 1999) and *Dendrite Intern., Inc. v. Doe No. 3*, 3 775 A.2d 756, 768-69 (N.J. Super. Ct. App. Div. 2001). Both *seescandy* and *Dendrite* discuss specificity in terms of being able to identify a potential party who may be subject to the court's jurisdiction. Here, Defendant did not set forth in the request that any Movant is subject to personal jurisdiction in New York. Thus, there is insufficient specificity.

RANDAZZA | LEGAL GROUP

**2.11** **Under the Fourth *Arista Record* Factor and the First Amendment, Defendant seeks Constitutionally Privileged information, Regardless of Purported need to Pierce Anonymity[9]**

Defendant cannot demonstrate a need for the Subpoenas in light of each of the Subpoena Subjects' fair use arguments. If this Court recognizes each user's post as entitled to fair use protections, then there is no possibility of Defendant maintaining an infringement suit. Defendant issued these subpoenas in response to Lolcow's request for declaratory judgment that each of the posts at issue constituted fair use. No part of the Defendant's participation in the declaratory judgment action benefits from forced disclosure of Movants' personal information. Defendant has nothing to lose here, but disclosure of Movants' identities would chill their speech and the speech of similarly situated anonymous internet users.

"A party who objects to a discovery request as an infringement of the party's First Amendment rights is in essence asserting a First Amendment privilege." *Perry v. Schwarzeneggar*, 591 F.3d 1147, 1160 (9th Cir. 2009). "That privilege protects against a forced '[d]isclosure[] of political affiliations and activities] that would have a deterrent effect on the exercise of free speech or freedom of association rights." *La Union Del Pueblo Entero v. Abbott*, No. SA-21-CV-00844-XR, 2022 U.S. Dist. LEXIS 222064, *28 (W.D. Tex. Dec. 9, 2022), *quoting Perry* at 1160. Thus, Defendant is required to justify the invasive subpoena "in light of any less intrusive alternatives." *Bonta* at 2386.

Here, the information is improperly sought because Defendant cannot maintain a non-frivolous suit against Movants.

---

[9] Movants recognize that, as to the third *Arista Recs.* factor, Defendant likely lacks alternate means to attempt to identify them at this time.

RANDAZZA | LEGAL GROUP

**2.12    Each of the Subpoena Respondents Maintains a Reasonable and Significant Expectation of Privacy**

Each of the Subpoena Respondents maintains a robust expectation of privacy and Defendant fails the fifth *Arista Recs.* factor.  To the extent that *Arista Recs.* and its progeny suggest there is rough parity between interests in anonymous speech and protecting one's intellectual property rights, this can only be true in cases where anonymity is used to mask unlawful behavior. *See Sony Music Entm't Inc. v. Does 1-40,* 326 F. Supp. 2d 556, 566 (S.D.N.Y. 2004).

In contrast, here, each Subpoena Respondent participated in fair use criticism and commentary.  Because Fair Use is not just "excused by the law, it is wholly authorized by the law," *Lenz v. Universal Music Corp.,* 815 F.3d 1145, 1151 (9th Cir. 2016),  Movants and their reasonable expectations are not handicapped by illegality and resultant diminished expectations.  Nor have any Movants waived this expectation through their participation on Kiwi Farms. The platform itself is designed to prioritize users' interest in anonymity.[10]

**3.0    CONCLUSION**

Fong-Jones committed sexual abuse and is now attempting to abuse the law to rid the internet of critique.  Movants have a constitutional right to criticize Defendant anonymously and the Court should not allow itself to become a vehicle for censorship.  In light of the foregoing, the Court should quash the subpoenas.

---

[10] *See* Kiwi Farms, *Privacy Policy*, available at **Exhibit 10**; https://kiwifarms.st/help/privacy-policy/ (discussing Kiwi Farms' commitment to user privacy) (last visited 06/08/2026).

RANDAZZA | LEGAL GROUP

Dated: June 8, 2026.                                    Respectfully Submitted,

                                                        /s/ Jay M. Wolman
                                                        Jay M. Wolman (JW0600)
                                                        RANDAZZA LEGAL GROUP, PLLC
                                                        100 Pearl Street, 14th Floor
                                                        Hartford, CT 06103
                                                        Tel: (888) 887-1776
                                                        Email: jmw@randazza.com

                                                        /s/ Marc J. Randazza
                                                        Marc Randazza, (*Pro Hac Vice* forthcoming)
                                                        RANDAZZA LEGAL GROUP, PLLC
                                                        30 Western Avenue
                                                        Gloucester, MA 01930
                                                        Tel:     702-420-2001
                                                        Email:  ecf@randazza.com

                                                        *Attorneys for Does 1-7*

---

26

RANDAZZA | LEGAL GROUP

Civil Action No. 1:26-cv-02059-KPF

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 8, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that a true and correct copy of the foregoing document is being served on all appearing parties via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully Submitted,

*/s/ Jay M. Wolman*
Jay M. Wolman (JW0600)

27

**RANDAZZA** | LEGAL GROUP