**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| LOLCOW LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:26-cv-02059-KPF |
| | ) | |
| ZHEN ELIZABETH FONG-JONES, | ) | |
| | ) | |
| Defendant. | ) | |

---

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF LOLCOW LLC'S MOTION FOR A PRELIMINARY INJUNCTION**
**AND REQUEST FOR AN EVIDENTIARY HEARING**

---

Matthew D. Hardin
Attorney Reg. No. 5899596
101 Rainbow Drive # 11506
Livingston, TX 77399
Phone: 212-680-4938
Email: MatthewDHardin@gmail.com

*Counsel for Lolcow LLC*

i

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ...............................................................................1

**STATEMENT OF FACTS** ....................................................................................3

    A.  The Declaratory-Judgment Action Places the Fair-Use Issue Before This Court ..............3

    B.  Defendant Has Continued DMCA Enforcement After the Case Was Filed .......................3

    C.  The Targeted Uses Are Critical Uses, Not Substitutes for the Photograph ........................6

    D.  Each New DMCA Notice and Subpoena Imposes Real Costs and Chills Speech ..............6

    E.  The Record Establishes Defendant's Bad Faith and Retaliatory Purpose..........................7

**LEGAL STANDARD** .......................................................................................8

**ARGUMENT** .............................................................................................11

    I.  LOLCOW IS LIKELY TO SUCCEED ON THE MERITS ...............................................11

        A.  The challenged uses are transformative criticism and commentary ......................11

        B.  The nature of the work supports fair use...............................................13

        C.  The amount used is reasonable because the image must identify the object of criticism.................................................................................13

        D.  There is no cognizable market substitution............................................14

        E.  Defendant's DMCA notices are vulnerable because fair use must be considered before a takedown notice is sent ..................................................14

        F.  At minimum, Lolcow raises serious questions and the hardships tip decidedly in its favor ..................................................................................15

    II.  LOLCOW WILL SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION.......16

        A.  The threatened loss of anonymous speech is irreparable ......................................16

        B.  The Section 512(h) Subpoenas Independently Warrant Relief...............................17

        C.  The Counter-Notice Procedure Is Not an Adequate Remedy ...............................18

        D.  Serial DMCA enforcement imposes continuing, nonrecoverable burdens............18

        E.  DMCA Takedowns Effect Extrajudicial Removal of Speech Without Adjudication ................................................................................19

    III.  THE BALANCE OF HARDSHIPS TIPS SHARPLY IN LOLCOW'S FAVOR............19

    IV.  THE PUBLIC INTEREST FAVORS AN INJUNCTION ...............................................20

    V.  LOLCOW REQUESTS AN EVIDENTIARY HEARING ..............................................21

    VI.  THE REQUESTED INJUNCTION IS NARROWLY TAILORED..............................22

    VII.  NO OR NOMINAL BOND IS APPROPRIATE .........................................................24

**CONCLUSION** .............................................................................................24

## TABLE OF AUTHORITIES

**Cases**

*Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 790 F. Supp. 2d 1024 (N.D. Cal. 2011)...9, 19

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023) .................11, 12

*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) ....................................................16, 17

*Bery v. City of New York*, 97 F.3d 689 (2d Cir. 1996)....................................................................16

*Beyond Blond Prods., LLC v. Heldman*, 479 F. Supp. 3d 874 (C.D. Cal. 2020)......................8, 19

*Bronx Household of Faith v. Bd. of Educ.*, 331 F.3d 342 (2d Cir. 2003) ......................................16

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) ...........................................................13

*Design Furnishings, Inc. v. Zen Path, LLC*, 2010 WL 4321568 (E.D. Cal. Oct. 21, 2010)............9

*Dhillon v. Doe*, 2014 U.S. Dist. LEXIS 24676 (N.D. Cal. 2014)............................................11, 13

*Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975 (2d Cir. 1996)........................................................24

*Drywall Tapers & Pointers of Greater N.Y., Local 1974 v. Local 530*, 954 F.2d 69 (2d Cir. 1992) ................................................................................................................................................10

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)...............................................................8

*Elrod v. Burns*, 427 U.S. 347 (1976) ...........................................................................................16

*Forts v. Ward*, 566 F.2d 849 (2d Cir. 1977) ................................................................................10

*Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015) (en banc) ..................................................19

*In re Charter Commc'ns, Inc.*, 393 F.3d 771 (8th Cir. 2005)........................................................17

*In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868 (N.D. Cal. 2022).............17

*In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d 875 (N.D. Cal. 2020)............................17

*Korman v. Free Beacon LLC*, 2026 U.S. Dist. LEXIS 69029 (E.D. Va. 2026) ............................11

*Lenz v. Universal Music Corp.*, 815 F.3d 1145 (9th Cir. 2016) ................................................9, 14

*Maximized Living, Inc. v. Google, Inc.*, 2011 U.S. Dist. LEXIS 147486 (N.D. Cal. 2011)..........17

*MCM Grp. 22 LLC v. Perry*, 818 F. Supp. 3d 623 (S.D.N.Y. 2026).............................................11

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995)......................................................16, 20

*Online Policy Grp. v. Diebold, Inc.*, 337 F. Supp. 2d 1195 (N.D. Cal. 2004)..............................15

*Primetime 24 Joint Venture v. Nat'l Broad. Co.*, 219 F.3d 92 (2d Cir. 2000)...............................10

*Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993) .................10

*Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229 (D.C. Cir. 2003) ...............................................................................................................................17

*Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010) ........................................................8, 16

*Shaykhoun v. Daily Mail*, 2026 U.S. Dist. LEXIS 40950 (S.D.N.Y. 2026) ..................................11

*Sony Music Entm't Inc. v. Does 1–40*, 326 F. Supp. 2d 556 (S.D.N.Y. 2004) ........................16, 17

*Talley v. California*, 362 U.S. 60 (1960) ...............................................................16, 20

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27 (2d Cir. 1995).................................8

**Statutes**

17 U.S.C. § 107............................................................................................ passim

17 U.S.C. § 512............................................................................................ passim

28 U.S.C. § 1651(a) ...........................................................................................9

28 U.S.C. § 2201.................................................................................................9

**Rules**

Fed. R. Civ. P. 26.................................................................................................5

Fed. R. Civ. P. 45................................................................................................17

Fed. R. Civ. P. 65............................................................................................ passim

iv

## PRELIMINARY STATEMENT

Plaintiff Lolcow LLC ("Lolcow") seeks a preliminary injunction under Fed. R. Civ. P. 65 to preserve this Court's ability to decide the central issue already presented by the complaint: whether anonymous Kiwi Farms users may use a professional headshot of Defendant Zhen Elizabeth Fong-Jones ("Fong-Jones" or "Defendant") as part of criticism, mockery, and commentary about Defendant's public conduct. The answer is yes. Such uses are facially transformative fair use. The problem is that Defendant is not waiting for that question to be litigated in the ordinary way.

Instead, after Lolcow filed this declaratory-judgment action, Defendant turned to serial DMCA takedown notices and 17 U.S.C. § 512(h) subpoena applications. Those *ex parte* mechanisms are powerful. A takedown notice can remove speech before any judge decides whether the speech is infringing. A § 512(h) subpoena can expose anonymous speakers before they have a meaningful opportunity to protect their identities. In ordinary infringement cases, those tools may serve legitimate statutory purposes. In this case, they are being used for a different purpose: to suppress criticism and identify critics while the fair-use issue is already pending before this Court.

This motion therefore turns on a simple proposition. The Court should require Defendant to litigate the fair-use issue here, in this adversarial case, rather than through serial private enforcement mechanisms that generate collateral disputes, impose disproportionate costs, and chill protected anonymous speech. Defendant may answer the complaint. Defendant may assert counterclaims. Defendant may pursue discovery when discovery opens. But Defendant should not be permitted to continue issuing new takedown notices and new § 512(h) subpoenas based on the same photograph, or variants of it, while the lawfulness of those uses is pending before this Court.

The record already supports relief. Lolcow is likely to succeed on the merits because the uses at issue fall within the heartland of § 107's protection for fair use: criticism and comment. The original work is a professional headshot used to identify or favorably depict Defendant. The challenged posts use altered versions of that image for a different purpose. They use it as raw material for criticism of Defendant and Defendant's behavior. That distinction matters. Critical commentary about a public figure often requires use of the image of the person being criticized. That is not market substitution. It is speech.

Irreparable harm is equally clear. Every new takedown removes or threatens speech before adjudication. Every new subpoena threatens to expose anonymous speakers. And every new DMCA proceeding imposes costs on Lolcow and its users while duplicating the same fair-use dispute already before this Court. Once an anonymous speaker is unmasked, the injury cannot be undone. Once speech is removed during a public controversy, money damages do not restore the lost opportunity to speak.

The balance of hardships and public interest also favor relief. Defendant suffers no cognizable hardship from being required to litigate in the case that is already pending. Lolcow and its users, by contrast, face continuing speech loss, anonymity loss, and mounting litigation burdens. The public has a strong interest in fair use, anonymous speech, and preventing copyright law from becoming a shortcut for private censorship.

Lolcow also requests an evidentiary hearing on this motion, although the present record already supports relief. The sworn declarations of Kevin Crawley and Thomas Hahn, submitted in support of Lolcow's contemporaneously filed Motion to Quash, ECF No. 30, establish that Defendant and her counsel have used the same identification apparatus, namely the law firm Kamerman, Uncyk, Soniker & Klein P.C. and its "investigator" Kathryn Tewson, to unmask

2

anonymous Kiwi Farms critics and retaliate against them, in one instance causing a critic to lose his employment. Crawley Decl. ¶¶ 5–16 (ECF No. 30-6, Ex. E); Hahn Decl. ¶¶ 4–6 (ECF No. 30-7, Ex. F). If Defendant disputes the obvious inference of ill motive, or knowledge that the challenged uses are criticism, or the consequences of unmasking, those disputes should be resolved through testimony.

## STATEMENT OF FACTS

### A. The Declaratory-Judgment Action Places the Fair-Use Issue Before This Court.

Lolcow filed this declaratory-judgment action on March 12, 2026. ECF No. 1. The complaint seeks a declaration that specified Kiwi Farms posts using altered versions of a professional photograph of Defendant constitute fair use under 17 U.S.C. § 107. The complaint identifies the relevant uses and frames the question that now drives the parties' dispute: whether a public figure may use copyright in a professional headshot to suppress critical commentary about herself.

That question is ripe. It does not depend on hypothetical future facts. Defendant has asserted copyright interests in the photograph and has used the DMCA process to remove or threaten removal of user posts. Lolcow operates the platform hosting the speech and faces repeated demands to remove content and identify users. The parties' legal positions are fixed. This Court can decide, in one orderly proceeding, whether the targeted uses are protected by fair use.

### B. Defendant Has Continued DMCA Enforcement After the Case Was Filed.

Beginning just eleven days after the complaint was filed, Defendant pursued a series of DMCA and subpoena measures directed at the same core image. On March 23, March 27, and April 2, 2026, Defendant sought issuance of three subpoenas. ECF Nos. 12, 14, and 16. The

3

subpoenas target uses of the same professional headshot identified in the complaint, or trivial variations presenting the same fair-use question.[1]

The following chronology, drawn from the docket and the supplemental declaration of Joshua Moon (ECF No. 30-9, Ex. H), shows a continuing and accelerating campaign rather than an isolated dispute:

| Date | Enforcement act | Targeted material | Record |
|---|---|---|---|
| Mar. 2, 2026 | DMCA takedown notice to Lolcow's DMCA agent | Screenshots of social media posts accompanied by criticism and an image over which the following text is overlaid: "Consent Accidents Do Occasionally Happen." | ECF Nos. 1-1, 1-2 |
| Mar. 12, 2026 | Declaratory-judgment complaint filed | Fair-use question framed | ECF No. 1 |
| Mar. 20, 2026 | Second DMCA takedown notice | Posts by Sexy Senior Citizen (photo altered to depict Fong-Jones with exaggerated and comedic smile, followed by text "Have a happy consent accident!"), Diggus Bickus (photo cropped, text added to say "Harro Pree Me Chinese Purincess, It was just a consent accident Ching Chong Bing Bong"), Teriyakiburns (Fong-Jones' visage juxtaposed with what appears to be a cartoon character), and Dread First (screenshot of a social media post accompanied by commentary) | ECF Nos. 1-3, 33-3, 33-4, 33-5 at 7, 33-6 at 3 |
| Mar. 21, 2026 | § 512(h) subpoena application; posts removed from public view | Identities of Doe users; posts 23950891 and 23960137 | ECF No. 12; Moon Supp. Decl. ¶ 4 (Claim 2, Posts 23950891, 23960137) |
| Mar. 23, 2026 | Subpoena issued | — | ECF No. 13 |

---

[1] Numerous other takedown requests have been sent, and numerous other substantially similar images exist for which no takedown notice has yet been sent. In the present posture, it appears Fong-Jones plans to impose death by a thousand cuts against Lolcow LLC with serial, functionally similar or identical, DMCA takedown notices all pertaining to the same headshot.

| Mar. 26, 2026 | § 512(h) subpoena application; post removed | Post 24020214 | ECF No. 14; Moon Supp. Decl. ¶ 4 (Claim 3, Post 24020214) |
|---|---|---|---|
| Mar. 27, 2026 | Subpoena issued | — | ECF No. 15 |
| Apr. 1, 2026 | § 512(h) subpoena application; posts removed | Posts 24097157 and 24102175 | ECF No. 16; Moon Supp. Decl. ¶ 4 (Claim 5, Posts 24097157, 24102175) |
| Apr. 2, 2026 | Subpoena issued | — | ECF No. 17 |
| Apr. 13, 2026 | Further DMCA censorship | Post 24071702 | Moon Supp. Decl. ¶ 4 (Claim 7, Post 24071702) |

Several forum posts were removed before the corresponding subpoenas issued, confirming that the enforcement is ongoing and not speculative, and that each new post invites a fresh notice and a fresh subpoena.

The sequence matters. Defendant did not first answer the complaint and ask this Court to decide fair use (despite that the complaint in this matter is premised upon Fong-Jones escalating threats to litigate). Defendant instead pursued parallel and serial *ex parte* proceedings designed to remove speech and identify speakers before the merits could be adjudicated. The practical effect is to create a moving target. Each new notice or subpoena spawns another round of objections, conferrals, and potential motion practice. Meanwhile, the merits question remains exactly the same.

Defendant has not answered the complaint. No Rule 26(f) conference has occurred. The responsive-pleading deadline has been extended. Yet Defendant has continued to press for compliance with subpoenas and has indicated that additional claims or enforcement steps may be forthcoming. Unless enjoined, nothing prevents Defendant from issuing further takedown notices

and further subpoena applications based on the same image every time a user posts another criticism.

**C. The Targeted Uses Are Critical Uses, Not Substitutes for the Photograph.**

The image ostensibly at issue is a professional headshot of Defendant. It is not alleged to be part of an artistic series or a commercial licensing market whose value depends on exclusivity. It depicts Defendant. The challenged uses employ that depiction largely but not exclusively because Defendant is the subject of the commentary.

The posts at issue use the photograph in ways that are facially critical: cropped, altered, captioned, juxtaposed, or contextually repositioned as part of discussion about Defendant. Those uses do not serve the original purpose of the photograph. They do not present Defendant in the flattering or neutral manner for which a professional headshot is ordinarily created. They use Defendant's image to criticize Defendant. That is a different purpose and a different market function.

The same is true of the images targeted by the subpoenas. They are not new works raising new copyright questions. They are substantially similar uses of the same headshot, or similar headshots of Defendant, in the same critical setting. Requiring separate adjudication for each crop, caption, or meme would elevate form over substance and allow Defendant to multiply costs indefinitely.

**D. Each New DMCA Notice and Subpoena Imposes Real Costs and Chills Speech.**

Kiwi Farms is a pseudonymous discussion forum. Its users rely on anonymity and pseudonymity, especially when criticizing public figures who may retaliate against critics. The Declaration of Joshua Moon (ECF No. 30-5, Ex. D) explains that the platform is designed to

6

minimize retained identifying information, in part because past compromises of user data caused serious harm to user trust. Moon Decl. ¶¶ 7-14.

Each new DMCA takedown notice requires review and response. Each new subpoena requires formal objections, conferral, and potentially motion practice. Each new demand also threatens the anonymity of users whose speech is presumptively protected unless and until Defendant makes the required showing. The burden falls especially on Joshua Moon, the person with access to the relevant internal systems. Moon Decl. ¶¶ 30, 35, 50.

The chilling effect is not theoretical. A user who sees that criticism of Defendant may generate a takedown notice and a subpoena seeking real-world identity has every reason to stop speaking. And once a user is identified, the bell cannot be unrung. No later merits ruling can restore anonymity after disclosure.

**E. The Record Establishes Defendant's Bad Faith and Retaliatory Purpose.**

The record already establishes Defendant's purpose. The declaration of Kevin Crawley describes how the same law firm now representing Defendant, Kamerman, Uncyk, Soniker & Klein P.C., through its investigator Kathryn Tewson, identified Crawley as a pseudonymous Kiwi Farms user, after which Defendant publicly disclosed his name, employer, and job title, warned that he was not the only such identification, and celebrated when he lost his position at Meta. Crawley Decl. ¶¶ 5–16. Thomas Hahn attests to a parallel pattern, in which the same firm sent him threatening correspondence over anonymous commentary that, by Defendant's own account, involved no copyrighted material. Hahn Decl. ¶¶ 4–6. These sworn accounts show that Defendant's interest in identifying anonymous Kiwi Farms users is the suppression of criticism, not the protection of any market for the photograph. To the extent Defendant disputes that purpose, the dispute should be resolved at an evidentiary hearing.

7

That evidence will be directly relevant to likelihood of success, irreparable harm, balance of hardships, public interest, and the scope of relief. It will also be relevant to whether Defendant's enforcement campaign reflects good-faith copyright protection or bad-faith misuse of copyright mechanisms. If Defendant disputes motive, knowledge, fair-use context, or the likely consequences of unmasking, those factual disputes should be resolved through testimony rather than on papers alone.

## LEGAL STANDARD

A preliminary injunction requires the movant to show irreparable harm and either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them fair ground for litigation, plus a balance of hardships tipping decidedly in the movant's favor. *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010). In copyright cases, *Salinger* applies the equitable framework of *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), and requires courts to consider likelihood of success, irreparable injury, balance of hardships, and the public interest. *Salinger*, 607 F.3d at 79-82.

To the extent the requested relief is characterized as mandatory because it requires withdrawal of pending takedown notices, Lolcow satisfies the heightened standard. A mandatory injunction may require a clear or substantial showing of likelihood of success. *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995). Here, the record and governing law clearly support relief. In all events, the principal relief requested is prohibitory: Defendant should be restrained from continuing the same DMCA enforcement campaign while the fair-use dispute is pending.

Courts have entered preliminary relief against abusive DMCA enforcement. In *Beyond Blond Productions, LLC v. Heldman*, 479 F. Supp. 3d 874, 886-89 (C.D. Cal. 2020), the court

8

ordered withdrawal of DMCA notices and enjoined further notices where the copyright claims were unlikely to succeed. In *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 790 F. Supp. 2d 1024, 1026 (N.D. Cal. 2011), the court recognized preliminary relief requiring withdrawal of DMCA takedown notifications. *Design Furnishings, Inc. v. Zen Path, LLC*, 2010 U.S. Dist. LEXIS 112314 (E.D. Cal. Oct. 20, 2010), likewise recognized preliminary relief against improper takedown activity.

The Court has authority to enter this relief, and it flows from the case Lolcow has already brought. Rule 65 supplies the procedural mechanism. The Declaratory Judgment Act, 28 U.S.C. § 2201, supplies the substantive controversy, and 17 U.S.C. § 512(f) confirms why continued notices premised on the same asserted infringement are legally suspect. Lolcow is likely to succeed on its request for a declaration that the challenged uses are noninfringing fair use, and that declaration would defeat the premise of Defendant's DMCA notices and § 512(h) applications. Lolcow is also likely to show that continued notices premised on the contrary assertion would lack the good-faith belief required by 17 U.S.C. § 512(c)(3)(A)(v) and enforced by § 512(f). See *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1152–53 (9th Cir. 2016). The All Writs Act, 28 U.S.C. § 1651(a), further confirms the Court's authority to protect its jurisdiction from collateral proceedings that threaten to moot or impair the controversy before it, but the Court need not rely on it, because Rule 65 and the pending declaratory judgment claim suffice.

The requested injunction does not restrain advocacy or petitioning. It does not enjoin Defendant from speaking about Lolcow or Kiwi Farms, from filing claims in this Court, from answering the complaint, from asserting compulsory or permissive counterclaims, from taking discovery when discovery opens, or from seeking relief by noticed motion. It reaches only the continued use of two *ex parte* statutory mechanisms, the § 512(c)(3) takedown notice and the §

512(h) subpoena, against derivative uses of the same photograph used in the same critical commentary already before this Court. Neither the First Amendment right to petition nor the Noerr-Pennington doctrine immunizes the bad-faith use of legal process. See *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 60–61 (1993) (sham exception reaches petitioning that is objectively baseless and that conceals an attempt to use the governmental process itself, rather than its outcome, as a weapon against another); *Primetime 24 Joint Venture v. National Broadcasting Co.*, 219 F.3d 92, 100–01 (2d Cir. 2000) (applying the sham exception to a pattern of baseless petitioning undertaken to impose unnecessary costs and suppress competition). A narrowly drawn order that leaves every adjudicative avenue open offends neither. Because Defendant retains the full ability to vindicate any genuine copyright interest through this litigation, the order restrains only misuse, not protected enforcement.

Where material facts bearing on a preliminary injunction are disputed, an evidentiary hearing is appropriate. *Forts v. Ward*, 566 F.2d 849, 851 (2d Cir. 1977), reversed a preliminary injunction entered without a hearing because affidavits presented disputed issues of fact. *Drywall Tapers & Pointers of Greater New York, Local 1974 v. Local 530*, 954 F.2d 69, 76-77 (2d Cir. 1992), recognizes that a hearing is not always required when the written record is sufficient, but the principle cuts both ways: where intent, credibility, factual context, and likely harm matter, testimony is the better procedure.

## ARGUMENT

## I. LOLCOW IS LIKELY TO SUCCEED ON THE MERITS.

### A. The challenged uses are transformative criticism and commentary.

Fair use expressly protects uses made "for purposes such as criticism, comment, news reporting, teaching, scholarship, or research." 17 U.S.C. § 107. That list begins with criticism and comment for a reason. Copyright grants limited rights to encourage expression. It does not give a public figure control over how others use an image to criticize that public figure.

The first fair-use factor asks about "the purpose and character of the use." 17 U.S.C. § 107(1). The purpose of the original photograph is straightforward: it is a professional headshot used to identify or favorably depict Defendant. The purpose of the challenged posts is different. They use the image to criticize, mock, and comment on Defendant. A reasonable observer would not see those posts as substitutes for the headshot. A reasonable observer would see commentary.

That is the same conclusion reached in *Dhillon v. Doe*, No. C 13-01465 SI, 2014 U.S. Dist. LEXIS 24676, at *14-15 (N.D. Cal. Feb. 25, 2014), where the court held that use of a political candidate's headshot in critical online commentary was fair use. The court recognized that the headshot was used not for its original identification function, but for criticism. *Korman v. Free Beacon LLC*, No. 1:25-cv-2076, 2026 U.S. Dist. LEXIS 69029, at *14-18 (E.D. Va. Mar. 30, 2026), followed the same logic post-*Warhol* and found fair use where a photograph of a public figure was used in critical commentary.

Recent authority from this District points the same way. In *MCM Group 22 LLC v. Perry*, 818 F. Supp. 3d 623, 631 (S.D.N.Y. Feb. 3, 2026), the court dismissed copyright claims involving an image used for commentary, explaining that a reasonable observer would understand the image as commentary. In *Shaykhoun v. Daily Mail*, No. 1:24-cv-09978 (ALC), 2026 U.S. Dist. LEXIS

40950 (S.D.N.Y. Feb. 26, 2026), the court found fair use where media defendants reproduced or embedded a plaintiff's viral social-media post, including in one article the photographs within that post, to report on the controversy the post generated. These cases reflect a basic principle: criticism of a person may use an image of that person when the image is part of the criticism.

Concrete examples confirm the point. The posts targeted by Defendant's notices and subpoenas use the headshot as the object of criticism, not as a substitute for it: one crops the headshot and pairs it with text criticizing Defendant's public statements; another incorporates the image into a meme commenting on Defendant's conduct; and a third uses a screenshot of Defendant's own public profile to identify the subject of the discussion. See Compl. Exs. A, C (ECF Nos. 1-1, 1-3); Written Objections (ECF Nos. 30-2 to 30-5) (describing the images as commentary on Defendant's appearance and public conduct). Lolcow will submit, if the Court wishes, a declaration reproducing the posts so the Court can see for itself that each is commentary.

These features bear directly on Defendant's good faith (or more properly, lack of good faith). The question under § 512(f) and for equitable purposes is not whether Defendant dislikes Kiwi Farms; it is whether Fong-Jones lacked a good-faith belief that these specific uses, cropped, captioned, and embedded in criticism, were infringing rather than fair. The Crawley and Hahn declarations show that the same firm and investigator who prepared Defendant's enforcement papers have repeatedly identified anonymous critics over noncopyrighted commentary, and the notices omit any fair-use analysis. Crawley Decl. ¶¶ 5–16; Hahn Decl. ¶¶ 4–6.

Defendant may rely on *Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023), but that decision does not help Fong-Jones. *Warhol* held that a secondary use sharing substantially the same commercial licensing purpose as the original may weigh against fair use. But *Warhol* also reaffirmed that criticism ordinarily uses a work to serve a distinct end. *Id.* at

12

528. Here, the original headshot depicts Defendant favorably or neutrally. The challenged posts use the image adversely, critically, and satirically. That is a different end.

**B. The nature of the work supports fair use.**

The second factor considers "the nature of the copyrighted work." 17 U.S.C. § 107(2). The work here is a professional headshot. It has expressive elements, as most photographs do. But its dominant function is informational: to show what Defendant looks like and to associate that likeness with Defendant's public-facing identity. *Dhillon* recognized that such a headshot is "more informational than creative." 2014 U.S. Dist. LEXIS 24676, at *15.

This factor is not usually dispositive. But it supports Lolcow here because the asserted photograph is not a fictional work, an unpublished manuscript, or an expressive artwork whose market depends on aesthetic licensing. It is a published image of the very person being criticized. That matters. When the subject of commentary is the person depicted, use of the image is part of the commentary's communicative force.

**C. The amount used is reasonable because the image must identify the object of criticism.**

The third factor considers "the amount and substantiality of the portion used." 17 U.S.C. § 107(3). In ordinary copying cases, use of an entire image may weigh against fair use. But context matters. Courts routinely recognize that visual commentary may need to use enough of the image to identify the person, thing, or work being criticized. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 588 (1994), explains that a secondary work may take enough to "conjure up" the original for its critical purpose.

The challenged uses do no more than that. They use the image to make Defendant recognizable as the object of criticism. Many uses are cropped, altered, captioned, or transformed by context. None uses the image in a way that competes with the original market. To require critics

13

to discuss Defendant without showing the image of Defendant would be to strip the criticism of much of its meaning.

**D. There is no cognizable market substitution.**

The fourth factor asks about "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). This factor strongly favors Lolcow. No plausible purchaser seeking to license a professional headshot of Defendant would instead use a Kiwi Farms meme, captioned criticism, or altered image. The markets are different because the purposes are different.

Defendant's theory would create a veto right over criticism. If a public figure could claim that every critical reuse of a headshot harmed the "market" for licensing that headshot, fair use would disappear precisely where it matters most. Courts must reject that sort of gamesmanship. The relevant market is not a market for suppressing criticism. Nor is it a market for licensing critical uses of one's own image only to friendly speakers.

This point is especially strong because the posts are hosted in a discussion forum context. Users are not selling Defendant's headshot. They are not competing with the photographer. They are not offering substitutes to media organizations seeking a licensed portrait. They are speaking about Defendant.

**E. Defendant's DMCA notices are vulnerable because fair use must be considered before a takedown notice is sent.**

The DMCA does not allow a copyright claimant to ignore fair use. *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1152-53 (9th Cir. 2016), held that fair use is "authorized by the law" and that a copyright owner must consider fair use before sending a takedown notification. A notice that proceeds despite actual or willful blindness to fair use can support liability under § 512(f). *Online*

*Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1204-05 (N.D. Cal. 2004), likewise held that knowingly improper DMCA notices aimed at suppressing speech can violate § 512(f).

Lolcow does not need a final § 512(f) adjudication to obtain preliminary relief. The relevance now is narrower and more immediate. Defendant's repeated DMCA notices and subpoena applications depend on the premise that these critical uses are infringing. The record shows the opposite. And the Crawley and Hahn declarations supply concrete evidence that Defendant and defense counsel knew, or deliberately avoided knowing, that the targeted posts were criticism and commentary unconnected to any copyrighted material, yet invoked copyright to remove and chill that criticism and to unmask its authors. Crawley Decl. ¶¶ 5–16; Hahn Decl. ¶¶ 4–6.

**F. At minimum, Lolcow raises serious questions and the hardships tip decidedly in its favor.**

Even if the Court concludes that fair use should be resolved after further factual development, Lolcow easily satisfies the "serious questions" standard. *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (likelihood of success not required if there are at least "serious questions" on the merits). The uses for which Fong-Jones is targeting Lolcow LLC and its users are critical, noncommercial, targeted at a public figure, and unlikely to substitute for any licensing market. The balance of hardships tips decidedly toward Lolcow because Defendant loses only the ability to continue *ex parte* enforcement while the Court adjudicates the issue. Lolcow and its users face loss of speech and anonymity.

15

## II. LOLCOW WILL SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION.

### A. The threatened loss of anonymous speech is irreparable.

The loss of First Amendment freedoms, "for even minimal periods of time," constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). That principle applies with special force to anonymous speech. Anonymous speech has deep constitutional protection. *Talley v. California*, 362 U.S. 60, 64 (1960), recognizes the historic role of anonymous pamphlets, leaflets, brochures, and books. *McIntyre v. Ohio Elections Commission*, 514 U.S. 334, 357 (1995), describes anonymity as "a shield from the tyranny of the majority."

There is generally no countervailing presumed copyright harm. *Salinger* rejected any automatic presumption of irreparable injury in copyright cases and required a real equitable showing. 607 F.3d at 77–78, 82. Lolcow makes that showing, and the harm it identifies is independent of any copyright presumption: the suppression of protected speech, the threatened and irreversible loss of anonymity, and serial extrajudicial enforcement that no damages award can undo. The Second Circuit treats the loss of First Amendment freedoms as irreparable. *Bery v. City of New York*, 97 F.3d 689, 693–94 (2d Cir. 1996); *Bronx Household of Faith v. Board of Education*, 331 F.3d 342, 349–50 (2d Cir. 2003). And the anonymity interest at stake is the same interest the Second Circuit and this Court protect in the § 512(h) setting. *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 118–19 (2d Cir. 2010); *Sony Music Entm't Inc. v. Does 1–40*, 326 F. Supp. 2d 556, 564–65 (S.D.N.Y. 2004).

Here, Defendant's DMCA campaign threatens both speech and anonymity. Takedown notices remove speech. Subpoenas threaten to identify speakers. These injuries are not compensable by money damages. A user's identity, once disclosed, cannot be made secret again.

16

A critical post, once removed during the relevant public debate, cannot fully recover its lost timing and audience.

Courts evaluating DMCA subpoenas recognize this chilling effect. In *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868, 876-78 (N.D. Cal. 2022), the court considered the risk that disclosure would expose an anonymous speaker to retaliation. The same risk exists here. Lolcow proffers that testimony and contemporaneous evidence will establish a concrete pattern of Fong-Jones using copyright and other tools to identify and pressure critics.

**B. The Section 512(h) Subpoenas Independently Warrant Relief.**

The takedown notices and the subpoenas work different harms and rest on different defects. A § 512(c)(3) notice removes content; a § 512(h) subpoena strips anonymity. Section 512(h) authorizes a subpoena only to identify an alleged infringer, not to gather witnesses, conduct general litigation discovery, or retaliate against critics. *Recording Industry Ass'n of America, Inc. v. Verizon Internet Services, Inc.*, 351 F.3d 1229, 1235 (D.C. Cir. 2003); *In re Charter Communications, Inc.*, 393 F.3d 771, 776–77 (8th Cir. 2005); *Maximized Living, Inc. v. Google, Inc.*, 2011 U.S. Dist. LEXIS 147486, at \*13–14 (N.D. Cal. Dec. 22, 2011); *In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d 875, 883 (N.D. Cal. 2020). The anonymity interest those subpoenas threaten is the same interest the Second Circuit protects in the anonymous-speaker context. *Arista*, 604 F.3d at 118–19; *Sony Music*, 326 F. Supp. 2d at 564–65. Continuing to seek § 512(h) subpoenas while the same fair-use dispute is pending before this Court threatens irreparable anonymity harm and imposes Rule 45 burdens outside the ordinary discovery sequence, the very concerns that have led courts to quash such subpoenas where unmasking would expose speakers to retaliation. *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868, 876–78 (N.D. Cal. 2022). Those defects are the subject of Lolcow's contemporaneously filed Motion to Quash,

17

ECF No. 30, and they independently support enjoining further § 512(h) applications based on the same uses.

## C. The Counter-Notice Procedure Is Not an Adequate Remedy.

Defendant may argue that § 512(g) already supplies the remedy for an improper takedown, because a user may file a counter-notification and obtain restoration unless the claimant sues. That procedure is inadequate here. A counter-notification does nothing to protect anonymity, which is precisely what the § 512(h) subpoenas seek. It does nothing to stop a repetitive campaign, because each new post invites a fresh notice and a fresh subpoena. And it forces pseudonymous speakers to surrender their addresses and consent to suit as the price of restoration. 17 U.S.C. § 512(g)(3)(D). Where the claimant has already generated court proceedings over the same fair-use question, Rule 65 can preserve the status quo without requiring anonymous critics to unmask themselves to keep their speech online.

## D. Serial DMCA enforcement imposes continuing, nonrecoverable burdens.

Defendant has already sought three subpoenas in a short period. Without an injunction, there is no limiting principle. Every new post, crop, caption, or edited version of the same headshot can generate another notice, another subpoena, another objection, another conferral, and another motion. That is not ordinary litigation. It is attrition through process.

Those burdens are not merely litigation expenses. They include operational burdens on a small platform, diversion of the only person with access to necessary systems, risk of exposing unrelated user data, and the chilling of user participation. The Moon Declaration explains that responding to historical identifying demands would require substantial technical work and would be unreliable. Moon Decl. ¶¶ 30, 35, 50.

Courts have recognized irreparable harm where bad-faith DMCA notices threaten continuing removal or disablement of online content. *Beyond Blond Productions, LLC v. Heldman*, 479 F. Supp. 3d at 886-89, granted preliminary relief requiring withdrawal of takedown notices. *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 790 F. Supp. 2d at 1026, reflects the same principle. Serial takedown activity can inflict harm before the merits are decided.

**E. DMCA Takedowns Effect Extrajudicial Removal of Speech Without Adjudication.**

A DMCA takedown notice can remove speech without a judicial finding. That is the statute's design for genuine infringement, but it becomes a censorship mechanism when wielded against obvious fair use. The harm is not that Defendant has sued. Defendant is entitled to litigate. The harm is that Defendant is using an extrajudicial system to suppress speech while avoiding the adversarial merits process already available in this case.

The Ninth Circuit's warning in *Garcia v. Google, Inc.*, 786 F.3d 733, 736 (9th Cir. 2015) (en banc), is apt: "a weak copyright claim cannot justify censorship in the guise of authorship." That is precisely the danger here. Copyright is being used not to protect a market for a photograph, but to suppress criticism of the person depicted in the photograph.

### III. THE BALANCE OF HARDSHIPS TIPS SHARPLY IN LOLCOW'S FAVOR.

The requested injunction is narrow. It does not prevent Defendant from litigating. It does not prevent Defendant from asserting counterclaims. It does not prevent Defendant from seeking discovery when discovery opens. It does not prevent Defendant from sending DMCA notices about genuinely different copyrighted works. It simply prevents Defendant from continuing to use ex parte DMCA mechanisms against the same headshot or any cropped, resized, annotated, captioned, or memed version of that photograph, used in materially similar critical commentary, while the fair-use issue is pending before this Court.

19

The hardship to Lolcow and its users is substantial. Without an injunction, Lolcow must continue responding to serial notices and subpoenas, users must continue facing the threat of unmasking, and protected speech remains vulnerable to extrajudicial removal. The harm grows with each new enforcement step.

The hardship to Defendant is minimal. Defendant's only cognizable interest is copyright enforcement. That interest is fully preserved by this litigation. If Defendant is right on fair use, Fong-Jones can prove it here and obtain appropriate relief. What Defendant cannot claim is a legitimate hardship in being denied the ability to suppress criticism through serial takedown notices and subpoenas while the merits remain undecided.

Nor can Defendant claim urgency. The photograph is a headshot. The challenged uses are criticism and commentary. Defendant has not identified any market license that will be lost if she is required to litigate. By contrast, Lolcow's users face immediate and irreparable speech and anonymity harms.

### IV. THE PUBLIC INTEREST FAVORS AN INJUNCTION.

The public interest favors fair use. Fair use is not a grudging exception to copyright. It is a built-in First Amendment safeguard. Copyright law encourages expression, but fair use ensures that copyright does not become a tool for suppressing commentary, criticism, scholarship, news, parody, and dissent.

The public interest also favors anonymous speech. *McIntyre* and *Talley* are not relics. Anonymous online speech is the modern pamphlet. It is often the only practical way for speakers to criticize powerful or aggressive public figures without risking personal retaliation.

The public interest further favors judicial economy. This Court already has the fair-use dispute before it. It is far more efficient to decide that issue once than to require a new fight each

time Defendant sends a takedown notice or seeks a subpoena based on the same photograph. An injunction would channel the parties into the ordinary adversarial process and preserve the Court's ability to decide the merits.

## V. LOLCOW REQUESTS AN EVIDENTIARY HEARING.

Lolcow respectfully requests an evidentiary hearing on this motion. If the Court concludes that the present record is sufficient to grant relief, Lolcow does not ask the Court to delay relief. But if Defendant disputes the factual predicates for an injunction, including fair-use context, Defendant's knowledge, Defendant's purpose, the risk of retaliation, or the harm caused by serial notices and subpoenas, those disputes should be resolved through testimony.

The Crawley and Hahn declarations, together with the contemporaneous communications and public statements they describe, already establish the following, and to the extent Defendant disputes any of it, Lolcow requests a hearing to resolve the dispute through testimony:

- The images at issue were used to criticize, mock, and comment on Defendant's public conduct, not to substitute for the original photograph or exploit any market for it;

- Defendant and her counsel knew, or had reason to know, that the uses were critical commentary when takedown notices and subpoena applications were pursued;

- Defendant has used copyright law as part of a broader campaign to stifle criticism and identify anonymous critics;

- Contemporaneous communications, public statements, technical activity, and prior conduct contradict any claim that the DMCA campaign was undertaken solely to protect a legitimate market for the photograph;

- Continued notices and subpoenas will chill anonymous speech, impose disproportionate burdens on Lolcow, and expose users to concrete retaliation risks.

21

This proffer bears directly on the equitable factors. It also bears on the propriety and scope of any injunction. A limited hearing would allow the Court to test motive, credibility, context, and harm without converting this motion into a full trial. If appropriate, the Court may also consolidate the preliminary-injunction hearing with trial on the merits under Rule 65(a)(2), provided the parties receive the notice required by that rule.

## VI. THE REQUESTED INJUNCTION IS NARROWLY TAILORED.

Lolcow requests an order providing the following relief pending final resolution of the fair-use question presented in this action:

- Enjoining Defendant, Defendant's agents, attorneys, and persons acting in concert with her from issuing further DMCA takedown notices under 17 U.S.C. § 512(c)(3) directed to Lolcow, Kiwi Farms, or any provider hosting Kiwi Farms content, to the extent such notices target uses of the copyrighted photograph at issue in this action, or non-substantively modified versions of that photograph, in materially similar critical commentary;

- Enjoining Defendant, Defendant's agents, attorneys, and persons acting in concert with her from seeking further subpoenas under 17 U.S.C. § 512(h) directed to Lolcow or concerning Kiwi Farms users, to the extent such subpoenas are based on uses of the same photograph or non-substantively modified versions of that photograph in materially similar critical commentary;

- Requiring Defendant to withdraw pending DMCA takedown notices directed to Lolcow or Kiwi Farms content that target the same photograph or non-substantively modified versions of that photograph in materially similar critical commentary;

22

- Providing that the injunction does not bar Defendant from litigating this action, answering the complaint, asserting compulsory or permissive counterclaims, seeking discovery after discovery opens, or seeking relief from this Court on a noticed motion;

- Providing that the injunction does not bar DMCA notices directed at genuinely different copyrighted works, or uses that are materially different from the critical-commentary uses at issue here;

- Setting no bond, or only a nominal bond, under Fed. R. Civ. P. 65(c), because Defendant will suffer no cognizable damages from being required to litigate the copyright dispute in this Court rather than through serial *ex parte* enforcement.

This relief will preserve the status quo. The status quo is not that every post remains online forever; it is that this Court decides the fair-use question before Defendant obtains extrajudicial removal or unmasking based on the same works. The relief comes in two tiers. The prohibitory tier restrains new takedown notices and new § 512(h) subpoenas directed at the covered uses and requires only the ordinary showing. The mandatory tier requires withdrawal of the pending notices directed at those uses; to the extent the Court views that as mandatory relief, Lolcow has made the clear showing it requires, but the Court may grant the prohibitory relief even if it reserves the mandatory relief for a fuller record. At a minimum, if the Court is not prepared to order any withdrawal on the present record, it should enter a temporary standstill order barring new takedown notices and new § 512(h) subpoena applications directed at the covered uses pending the requested evidentiary hearing.

This relief is tailored to the abuse shown by the record. It does not give Lolcow or its users blanket immunity. It does not adjudicate every conceivable future use. It merely preserves the

23

status quo and prevents Defendant from multiplying takedown and subpoena proceedings based on the same fair-use dispute already before the Court.

## VII. NO OR NOMINAL BOND IS APPROPRIATE.

Rule 65(c) requires security "in an amount that the court considers proper." Fed. R. Civ. P. 65(c). The Court has discretion to set a nominal bond where the enjoined party faces no meaningful risk of monetary harm. Here, Defendant will suffer no cognizable damages from being required to litigate her copyright position in this action rather than through serial DMCA notices and subpoenas.

A nominal bond is appropriate. Rule 65(c) requires security, but the amount lies within the Court's broad discretion, and a nominal bond is proper where, as here, the enjoined party faces no proven likelihood of damages from being required to litigate in court rather than through serial ex parte notices. *Doctor's Associates, Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996) (district court had broad discretion to set appropriate bond).

Defendant does not identify a lost licensing market. Nor does Fong-Jones identify commercial competition. Defendant cannot and does not identify any imminent harm that would occur if Defendant must proceed through the normal course of adversarial litigation. The only conduct restrained is further *ex parte* enforcement against materially similar critical uses while the Court decides fair use. A nominal bond is therefore appropriate.

## CONCLUSION

For the foregoing reasons, Lolcow respectfully requests that the Court grant a preliminary injunction in the form described above. Lolcow further requests an evidentiary hearing, and proffers that it can elicit testimony and introduce contemporaneous evidence showing that the fair-use doctrine applies to the images at issue and that Defendant's contrary DMCA notices, subpoena

24

applications, and related enforcement efforts were undertaken in bad faith as part of a broader effort to stifle criticism.

Respectfully submitted this the 8th day of June 2026,

HARDIN LAW OFFICE

By:    /s/ Matthew D. Hardin
Matthew D. Hardin
Attorney Reg. No. 5899596
101 Rainbow Drive # 11506
Livingston, TX 77399
Phone: 212-680-4938
Email: MatthewDHardin@gmail.com

*Counsel for Lolcow LLC*

25

## CERTIFICATE OF COMPLIANCE

Undersigned counsel certifies that the foregoing Memorandum of Law complies with the applicable word-count limitation. Excluding the caption, the table of contents, the table of authorities, the signature block, and this certificate, the Memorandum contains 6,916 words, as counted by the word-processing program used to prepare it. That total is within the 8,750-word limit set by Rule 4.B.

/s/ Matthew D. Hardin
Matthew D. Hardin
*Counsel for Plaintiff Lolcow LLC*

26