**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x

LOLCOW LLC,                                              :

                                    :    Civil Action No. 1:26-cv-02059-KPF

                Plaintiff,                :

                                      :

        -against-                    :

                                      :    **SUBPOENA SUBJECTS' REPLY IN**

ZHEN ELIZABETH FONG-JONES,            :    **SUPPORT OF MOTION TO QUASH**

                                      :

                Defendant.          :

                                      :

-----------------------------------------------------------x

Nothing in Defendant's opposition (ECF No. 42) refutes the legal certainty of fair use. None of the subpoena subjects violated Fong-Jones's copyright in the image. The motion (ECF No. 31) should be granted, and the subpoenas (ECF Nos. 13 & 15) should be quashed.

**1.0    INTRODUCTION**

Fong-Jones admitted to sexual assault, albeit through a form of newspeak, calling it a "consent accident."[1] She made this comment on social media. Her avatar for that social media account is the headshot that she is trying to claim has been the subject of copyright infringement. Movants participated in an online forum discussion, using, at various times and in different ways, Fong-Jones's avatar headshot for the purpose of commenting about Fong-Jones, criticizing her online speech, and commenting on the sexual assault. Each of these posts was transformative and the fair use is apparent on the record. The subpoenas are an attack on the First Amendment and anonymous protected speech. 17 U.S.C. § 107 permits the use of a screen shot of a person's social

---

[1] Fong-Jones claims to assert a legal victory on this point, citing to *Fong-Jones v. Flow Chemical Pty Ltd.*, [2023] VSC 770. That ruling is an Australian decision in which Fong-Jones obtained a default judgment and which does not, in fact, make any finding as to whether the sexual assault assertion is false. Of course, even if the Australian court did make that finding, it would not preclude Movants from believing that Fong-Jones referring to the incident as a "consent accident" is an admission of sexual assault.

1

RANDAZZA | LEGAL GROUP

media avatar to criticize them.  *See, e.g., Shaykhoun v. Daily Mail*, No. 1:24-cv-09978 (ALC), 2026 U.S. Dist. LEXIS 40950, at *15-17 (S.D.N.Y. Feb. 26, 2026).

## 2.0    ARGUMENT

### 2.1    Internal Access and URL Hacking Does Not Affect Mootness

As to three of the Movants, Fong-Jones admits (ECF No. 42 at 14) that the posts were taken down.  And Fong-Jones does not dispute that, per *Maximized Living, Inc. v. Google, Inc.*, 2011 U.S. Dist. LEXIS 147486 (N.D. Cal. Dec. 22, 2011), if they are down, then a Section 512(h) subpoena is improper.  While Fong-Jones asserts that there may be a residual nominal-value infringement claim available for the past publication, Defendant does not point to any legal authority that says a 512(h) subpoena would still be valid in such circumstances.  Instead, Defendant quibbles over whether the posts were "removed" or "disabled" because they are still accessible to Plaintiff and its staff or might be seen by one determined to engage in URL hacking. Moderators may be deemed agents of a website operator.  *See, e.g., Enigma Software Grp. USA, LLC v. Bleeping Comput. LLC*, 194 F. Supp. 3d 263, 275-76 (S.D.N.Y. 2016).  Thus, the fact that Lolcow and its agents can still access removed posts makes them no less removed or disabled. The general public and non-agent users cannot see them.  Similarly, the fact that Defendant's lawyer's paralegal can engage in potentially criminal URL hacking,[2] doesn't make them any less removed or disabled; a safe would still be deemed locked even though an expert safe-cracker could unlock it.  Lolcow removed the posts of Doe 2 a/k/a Sexy Senior Citizen, Doe 3 a/k/a Diggus Bickus, and Doe 7 a/k/a GettrGriftr and the subpoenas are moot as to them.

---

[2] *Compare United States v. Auernheimer,* No. 11-cr-470 (SDW), 2012 U.S. Dist. LEXIS 158849, at *8-9 (D.N.J. Oct. 26, 2012) (denying dismissal of indictment under 18 U.S.C. § 1030(a)(2)(C) for URL hacking) *rev'd on other grounds*  2014 U.S. App. LEXIS 6671 (3d Cir. Apr. 11, 2014).

2

RANDAZZA | LEGAL GROUP

**2.2    The Posts are Fair Use**

All seven posts use the image in a transformative and critical way; the fair use is apparent on the record.  Contrary to Defendant's assertion, the transformed uses of the photograph do not simply use it for its inherent purpose—to depict and identify Fong-Jones.[3]

Defendant relies heavily on this Court's decision in *BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F. Supp. 3d 395 (S.D.N.Y. 2016), but that reliance is misplaced.  In *BWP*, this Court correctly determined that the republication of photographs of celebrities was not transformative where Gossip Cop Media did not "comment or report on the images in question, nor does it critique the source websites' use of those photos" and where there was a "failure to implicate the images themselves[.]"  *Id.* at 404-05.  Thus, the republications added "no new meaning or expression to the images; contributes no information to its articles; and is otherwise extraneous to its reporting function."  *Id.* at 405.  Nor did that defendant "place[] it in a context different from that in which it was displayed" by the copyright owner.  *Id.* at 406.

In contrast to *BWP*, Movants here used the image in entirely different contexts, commenting on and morphing the image, and otherwise engaging in commentary on Defendant's social media posts in which it incidentally appeared.

Nor does *BWP* conflict with *Dhillon v. Doe*, 2014 U.S. Dist. LEXIS 24676 (N.D. Cal. Feb. 25, 2014), where the photograph was used in criticizing the subject thereof; and, contrary to Defendant's assertion or its cited cases, *Dhillon* is not limited to political speech.  In *Strom v. Petershagen*, 2024 U.S. Dist. LEXIS 137544, at *9 (W.D. Wash. Aug. 2, 2024), the image was cropped, juxtaposed with other content, and commented on, all of which occurred here.  In *Korman*

---

[3] The Court can and should ignore Defendant's parade of horribles at fn. 10 of the opposition.  It is emblematic of copyright misuse and promotes the perversion of the Copyright Act into a means to limit unpopular, but free, speech.

RANDAZZA | LEGAL GROUP

*v. Free Beacon LLC*, 2026 U.S. Dist. LEXIS 69029, at *18 (E.D. Va. Mar. 30, 2026), the image there was used to portray the subject in a negative light, an entirely different purpose than the original. And *Dermansky v. Hayride Media, LLC*, 2023 U.S. Dist. LEXIS 168076, at *29-30 (E.D. La. Sep. 21, 2023) distinguished *Dhillon* as inapt, because in *Dermansky* the copied image was used for the same purpose as the original: to illustrate an article. Nowhere do these cases restrict fair use to political discourse and none of those cases would suggest that the uses of the image of Defendant are not transformative. Social discourse and commentary are First Amendment protected speech, and a public figure admitting to sexual assault is fair game to comment on - through fair use of her social media avatar.

Additionally, Defendant highlights that incidental use qualifies as fair use. ECF No. 42 at 17 citing *Bouchat v. Baltimore Ravens Ltd. P'ship*, 737 F.3d 932 (4th Cir. 2013) ("*Bouchat V*"). As another court in this District determined, copying of social media posts, where they are being commented on and critiqued, constitutes fair use. *Shaykhoun v. Daily Mail*, No. 1:24-cv-09978 (ALC), 2026 U.S. Dist. LEXIS 40950, at *15-17 (S.D.N.Y. Feb. 26, 2026). The inclusion of the image as appearing in those posts is merely incidental to the commentary and critique.

As to Doe 5 a/k/a Dread First and Doe 6 a/k/a The Mass Shooter Ron Soye, Defendant's argument runs headfirst into *Shaykhoun* and *Bouchat V*; Defendant's theory would prevent any otherwise fair use copying of a social media post or series of posts if the subject's photographer claimed infringement. All Donald Trump or Gavin Newsom would need to do to prevent commentary on posts they may have determined needed to be deleted for political purposes is claim copyright infringement in their headshots. The Court should not make new, novel, and unprecedented law restricting fair use and free speech in this manner. If it does, it should stay that order while the Second Circuit resolves whether this new approach to fair use is supportable.

RANDAZZA | LEGAL GROUP

As to Doe 3 a/k/a Diggus Bickus, the tighter crop of the photo places Defendant in an unflattering light.  And Defendant ignores the context in which it was posted (ECF No. 33-4); it was in direct response to a post by a different user and it uses the photograph as a form of ventriloquism, placing "IT WAS JUST A CONSENT ACCIDENT" and nonsense words directly underneath the photo, so that the viewer can imagine Defendant actually saying it.

As to Doe 2 a/k/a Sexy Senior Citizen, where Defendant's expression in the photo is grossly exaggerated, Defendant asserts that it "targets the subject, not the work[.]"  (ECF No. 42 at 20).  This is nonsensical—the image is directly edited.  But for the original expression, the transformative one could not exist.  Moreover, Defendant once more ignores the post (ECF No. 33-3) where Doe 2 directly writes "It looks like [Defendant] used some kind of a filter or touched [the image] up in Photoshop or with AI.  Guess what, [Defendant]?  I can do that too:  Spoiler: Nighmare fuel."  It is a post entirely about and critical of the photo.

As to Doe 1 a/k/a 3MMA and Doe 7 a/k/a GettrGriftr, both use the photo with the "Consent Accidents Do Occasionally Happen" overlay.  Doe 1 declares it the "new official, consent accident portraiture[.]"  (ECF No. 33-1, emphasis in original).  Doe 7 uses it to criticize Defendant and comment on Defendant's image, as represented in the photo, as a "brickface[.]"  (ECF No. 33-2).  The overlay and juxtaposition of the text with the image is reminiscent of the fair use juxtaposition of text with an image in *MCM Grp. 22 LLC v. Perry*, 818 F. Supp. 3d 623 (S.D.N.Y. 2026).

And as to Doe 4 a/k/a Teriyakiburns, the image is juxtaposed with a film still, again akin to the collage found to be fair use in *Perry, supra.*  The republication of the image was necessary in order to convey the direct comparison to an issue in the movie *Brazil*.  Thus, the use of the image is transformative.

5

RANDAZZA | LEGAL GROUP

The remaining factors favor Movants or are, at worst, neutral.  In *BWP,* the Court gave consideration to the fact that the use in that case was commercial; here, all of the uses by Movants are non-commercial.  That the photograph may contain some creative elements does not render it any less an informational piece, intended to document to the world "this is what Defendant looks like."  As in *BWP*, this factor tips in favor of Movants.

As to the amount and substantiality of the work used, Defendant makes a gross misrepresentation that Does 5 & 6 used the entire work.  The original, appearing at ECF No. 33-8, shows Defendant with a substantial amount of tree above the head and going down to Defendant's diaphragm.  None of the Movants, including Does 5 & 6 (ECF Nos. 33-5 & 33-6), displayed that much of the image vertically, and it is also cropped horizontally.  The Court should not credit Defendant's misrepresentation.  None of the Movants used any more of the work than necessary.  Finally, there is no market for the image.  No one is choosing one of Movant's transformed versions as a substitute for licensing the unadulterated original from Defendant.  Defendant attempts to skirt around the issue, by calling it "premature", but it is obvious.  In *Perry*, the court said "a person in the market for a sexually explicit, pornographic film would not turn to the Tweet.  Because Defendant's use of the still frame would not, and could not, usurp the market for the Video, the fourth factor weighs in favor of fair use." 818 F. Supp. 3d at 633.  So, too, here; no one is turning to the doctored photos of Fong-Jones (with criticism printed over some of them) in place of the original.  Nobody is going to decide to use a photo juxtaposing Fong-Jones with a character in a Terry Gilliam film either. The subpoenas are improper because they target free speech and fair use.

**RANDAZZA** | LEGAL GROUP

### 2.3    Movants are Entitled to Maintain their Anonymity

Kiwi Farms users like Movants expect anonymity.  "Although the Internet is the latest platform for anonymous speech, online speech stands on the same footing as other speech—there is 'no basis for qualifying the level of First Amendment scrutiny that should be applied' to online speech." *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) (*quoting Reno v. ACLU,* 521 U.S. 844, 870 (1997)).  "Anonymity is a shield from the tyranny of the majority. … It thus exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation – and their ideas from suppression – at the hand of an intolerant society." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) citing J. Mill, On Liberty and Considerations on Representative Government 1, 3-4 (R. McCallum ed. 1947).  The *Arista Records* factors serve to protect this fundamental freedom.

Contrary to the assertion of Defendant, there is no *prima facie* showing.  While Defendant arguably can show the bare elements of an infringement claim, *Arista Records* does not turn a blind eye to defenses.  The factors are a "general standard", and the actionable harm must be "concrete[]."  *Arista Records Ltd. Liab. Co. v. Doe*, 604 F.3d 110, 119 (2d Cir. 2010).  The fair use defense undermines this factor; to hold otherwise would mean that anonymity is eviscerated where a copyright owner wants to suppress speech.  Defendant's argument raises the prospect that Section 512(h) is unconstitutional as-applied.  The Court need not go so far; rather, it can follow that the "general standard" and "concreteness" of *Arista Recs.* requires consideration of defenses like fair use.

As to sufficient specificity, Defendant attempts to talk around the necessity of jurisdiction and the patent lack of it here.  "Jurisdiction" means "jurisdiction;" it does not mean "a defendant

**RANDAZZA** | LEGAL GROUP

exists" as Defendant suggests.  Defendant does not show that any Movant is subject to jurisdiction in this Court, thus the second factor fails.

While the third factor (lack of alternative means) favors Defendant, the fourth and fifth do not.  Defendant ignores that Movants, under the fourth factor, are asserting their First Amendment privilege to engage in anonymous speech.  Unmasking Movants would be improper as no non-frivolous suit can be brought; fair use precludes such suit.  And, as to the fifth factor, Movants have a reasonable expectation of privacy.  That *Arista Recs.* establishes this factor does not mean a copyright owner automatically prevails, as Defendant suggests.  This whole case is about suppressing anonymous speech and chilling those who would dare to mock and criticize Defendant for apparent admitted sexual assault.  Being offended does not give Defendant the authority to run roughshod over freedom.  Defendant makes no arguments other than saying *Arista Recs.* exists to suggest Movants do not enjoy a reasonable expectation of privacy in their Kiwi Farms speech.  Thus, the *Arista Recs.* factors favor Movants.

Finally, any potentially foreign, non-citizen Movant enjoys the same protections as any American.  The speech was published through an American website on American servers.  Moreover, although Defendant cites *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 140 S. Ct. 2082, 2087 (2020), which held that "foreign organizations operating abroad . . . possess no rights under the First Amendment," it cannot be read in isolation.  Movants did not initiate the subpoenas.  In a case distinguishing *Aid for Int'l Dev.,* the Second Circuit addressed another involuntary litigant, there a criminal defendant, observing he:

> is not a free-floating foreigner invoking the jurisdiction of our federal courts to vindicate a Constitutional right. It is the government that invoked such jurisdiction when it pursued indictment; Bescond is a defendant in a U.S. criminal court. As such, she is not without rights. If the right to due process does not attach until Bescond travels to the United States, it will have been infringed beyond remedy as soon as the right attaches.

8

**RANDAZZA** | LEGAL GROUP

*United States v. Bescond*, 24 F.4th 759, 768 (2d Cir. 2021).  The same holds for any non-citizen Movant here.  Defendant invoked the jurisdiction of this Court when it sought the subpoena.  If the right to free speech does not attach unless a subpoena subject travels to the United States and thereby unmasks him/herself, it will have been lost beyond remedy.  And Defendant admits that Section 107 (governing fair use) has no citizenship/territorial limitation.  That it may not rise to the level of the First Amendment does not give license for an offended copyright owner to break a reasonable expectation of privacy for a meritless putative claim.  Thus, the Court should protect a movant whether or not he/she is an American or on American soil.

**3.0    CONCLUSION**

For all of Fong-Jones's protestations that Movants can simply keep saying things that offend Fong-Jones so long as they are not using the image, this is not credible.  Once Fong-Jones has Movants' identities, she is apt to use that information to file SLAPP suits against them.  Section 512(h) is but a means to an end—to chill the speech of those who hurt Defendant's feelings.

The Court should not give into this tactic. The subpoenas should be quashed.

Dated: July 6, 2026.                          Respectfully Submitted,

                                              */s/ Jay M. Wolman*
                                              Jay M. Wolman (JW0600)
                                              RANDAZZA LEGAL GROUP, PLLC
                                              100 Pearl Street, 14th Floor
                                              Hartford, CT 06103
                                              Tel: (888) 887-1776
                                              Email: jmw@randazza.com

                                              */s/ Marc J. Randazza*
                                              Marc Randazza, (*Pro Hac Vice*)
                                              RANDAZZA LEGAL GROUP, PLLC
                                              30 Western Avenue
                                              Gloucester, MA 01930
                                              Tel: (888) 887-1776
                                              Email: ecf@randazza.com
                                              *Attorneys for Does 1-7*

9

RANDAZZA | LEGAL GROUP

Civil Action No. 1:26-cv-02059-KPF

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 6, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that a true and correct copy of the foregoing document is being served on all appearing parties via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully Submitted,

*/s/ Jay M. Wolman*
Jay M. Wolman (JW0600)

10

**RANDAZZA** | LEGAL GROUP