# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| LOLCOW LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:26-cv-02059-KPF |
| | ) | |
| ZHEN ELIZABETH FONG-JONES, | ) | |
| | ) | |
| Defendant. | ) | |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF LOLCOW LLC'S MOTION FOR A PRELIMINARY INJUNCTION

Matthew D. Hardin
Attorney Reg. No. 5899596
Hardin Law Office
101 Rainbow Drive # 11506
Livingston, TX 77399
Phone: 212-680-4938
Email: MatthewDHardin@gmail.com

*Counsel for Lolcow LLC*

i

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 2

    I. LOLCOW IS LIKELY TO SUCCEED ON THE MERITS OF ITS FAIR-USE
    DECLARATION. ............................................................................................................ 2

        A. The governing standard, and the record that now permits its application. ........................ 2

        B. Factor one: the uses are transformative criticism and commentary, including commentary
        on the photograph itself. .......................................................................................... 3

        C. The opposition's cases confirm the distinction. ............................................................ 4

        D. Factors two through four: creative work, reasonable taking, and no market substitution. 5

        E. The notices are independently vulnerable under § 512(f), and the objective enforcement
        pattern impeaches the claimed pre-notice analysis. .............................................................. 6

    II. THE "SERIOUS QUESTIONS" ARGUMENT MISTAKES ALTERNATIVE PLEADING
    FOR CONCESSION, AND CONFLATES THREE DIFFERENT STANDARDS. .................. 7

        The retaliation evidence is material, and it stands unrebutted. .............................................. 8

    III. THE IRREPARABLE-HARM SHOWING STANDS UNREBUTTED IN EVERY
    RESPECT THAT MATTERS. ............................................................................................ 9

        A. The threatened injuries are to interests damages cannot restore. ...................................... 9

        B. The counter-notification "remedy" costs the speaker the very interest at stake. ............. 10

        C. Fong-Jones's opposition addresses the wrong harm. ...................................................... 10

        D. The assertion that Lolcow can simply restore the posts ignores the coercive structure
        of § 512. ................................................................................................................ 11

    IV. THE PROPOSED INJUNCTION RESTRAINS PRIVATE SELF-HELP, NOT
    PETITIONING, AND THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR
    IT. ............................................................................................................................ 12

        A. A § 512(c) notice is not a petition to any court. ............................................................. 12

        B. The balance of hardships tips decidedly toward Lolcow. ................................................ 12

        C. The public interest favors the injunction. ....................................................................... 13

    V. THE INJUNCTION CAN BE TAILORED TO MEET EVERY RULE 65(d)
    OBJECTION. ................................................................................................................ 13

    VI. NO BOND, OR A NOMINAL BOND, IS APPROPRIATE, AND LOLCOW RENEWS
    ITS REQUEST FOR AN EVIDENTIARY HEARING. ....................................................... 14

CONCLUSION .................................................................................................................... 15

ii

**TABLE OF AUTHORITIES**

**Cases**

*Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 790 F. Supp. 2d 1024 (N.D. Cal. 2011) 12, 14

*Arista Records LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010)                                9

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023)          3

*Beyond Blond Prods., LLC v. Heldman*, 479 F. Supp. 3d 874 (C.D. Cal. 2020)          12, 14

*BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F. Supp. 3d 395 (S.D.N.Y. 2016)     4

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994)                              3, 5

*Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30
(2d Cir. 2010)                                                                        2, 7

*Design Furnishings, Inc. v. Zen Path LLC*, 2010 U.S. Dist. LEXIS 112314 (E.D. Cal. Oct. 20,
2010)                                                                               12, 14

*Dhillon v. Doe*, No. C 13-01465 SI, 2014 U.S. Dist. LEXIS 24676 (N.D. Cal. Feb. 25, 2014)  4

*Elrod v. Burns*, 427 U.S. 347 (1976)                                                    9

*Griner v. King*, 104 F.4th 1 (8th Cir. 2024)                                            5

*Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539 (1985)              5

*Katz v. Chevaldina*, 802 F.3d 1178 (11th Cir. 2015)                                    4

*Lenz v. Universal Music Corp.*, 815 F.3d 1145 (9th Cir. 2016)                         6, 8

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995)                               13

*MCM Grp. 22 LLC v. Perry*, 818 F. Supp. 3d 623 (S.D.N.Y. 2026)                         5

*North Jersey Media Group Inc. v. Pirro*, 74 F. Supp. 3d 605 (S.D.N.Y. 2015)            5

*Online Policy Grp. v. Diebold, Inc.*, 337 F. Supp. 2d 1195 (N.D. Cal. 2004)           13

*Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993)  8, 12

*Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010)                                      2, 9

*Shaykhoun v. Daily Mail*, No. 1:24-cv-09978 (ALC), 2026 U.S. Dist. LEXIS 40950
(S.D.N.Y. Feb. 26, 2026)                                                               4

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008)                         2, 3

**Statutes**

17 U.S.C. § 107                                                                      4, 8

17 U.S.C. § 512(c)                                                                  passim

17 U.S.C. § 512(f)                                                                6, 7, 8, 13

17 U.S.C. § 512(g)                                                                  9, 10, 11

17 U.S.C. § 512(h)                                                                 10, 12, 15

**Rules**

Fed. R. Civ. P. 8(d)            7

Fed. R. Civ. P. 65            13, 14

**PRELIMINARY STATEMENT**

The opposition's lead objection to this motion, indeed its asserted trump card, was that Lolcow "never puts the challenged posts before the Court," and that a movant who has not introduced "the very works whose fair-use status it asks the Court to predetermine" cannot carry its burden "on any factor." ECF 42 at 29.[1] Fong-Jones's evidentiary quibble is now moot: every challenged post, and the photograph itself, is in the record as an exhibit. ECF 33-1 through 33-8. The parties therefore now agree on the one thing that matters most: this Court can look at the uses. What the Court will see is a headshot deployed in critical commentary about a public figure, in several instances altered, annotated, or juxtaposed, and in at least one instance criticized in terms of its photographic quality (its editing, its filtering).

The record now also supplies the best argument for interim relief: Fong-Jones's enforcement continued during the briefing of this very motion. On June 25, days after the opposition was filed, Fong-Jones's counsel served yet another takedown notice, directed in part at a hand-drawn derivative in a post that Lolcow's ordinary moderation had already removed two days earlier. Moon Reply Decl. ¶¶ 8, 14. *See also* Exhibit A. The two images in question illustrate not only that Fong-Jones is abusing the DMCA process to remove criticism from the Internet, but also that Fong-Jones wishes to prevent even this lawsuit or Fong-Jones's own tactics from being discussed or criticized:

---

[1] Using the pagination of the Court's CM/ECF system, this would be ECF No. 42 at 34.



Fong-Jones cannot credibly claim that the most recent DMCA notice targeting the above images was issued in good faith. Fong-Jones's repetitive notices aimed at material already removed is powerful evidence that the enforcement campaign operates in bad faith and mechanically, rather than through the use-specific fair-use review the statute requires. Meanwhile, Fong-Jones has counterclaimed on the same photograph and the same posts, ECF 51, placing every asserted right before this Court for adjudication. The injunction Lolcow seeks would take nothing from Fong-Jones except extrajudicial self-help while the Court decides the question both sides have now asked it to decide.

## ARGUMENT

## I.    LOLCOW IS LIKELY TO SUCCEED ON THE MERITS OF ITS FAIR-USE DECLARATION.

### A.    *The governing standard, and the record that now permits its application.*

A preliminary-injunction movant must show likelihood of success or, in this Circuit, sufficiently serious questions going to the merits together with a balance of hardships tipping decidedly in its favor, plus irreparable harm, a favorable balance of equities, and consistency with the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010); *Citigroup Global Mkts., Inc. v. VCG Special*

*Opportunities Master Fund Ltd.*, 598 F.3d 30, 35–38 (2d Cir. 2010) (serious-questions standard survives *Winter*). The opposition's central submission was that no merits assessment is possible because the uses were not in evidence.[2] They now are, in exhibits the movants themselves filed. ECF 33-1 through 33-8. Fair use on a complete documentary record, where the original and every secondary use can be laid side by side, is a question courts decide all the time.

The opposition is also estopped from its own premise by its own conduct. Its theory of the notices is that Fong-Jones personally performed a complete four-factor fair-use analysis of every accused post before sending each notice, and acted on the results. ECF 42-1 ¶¶ 5–6. If the materials before Fong-Jones permitted a unilateral adjudication of fair use, with sufficient confidence to trigger federal takedown machinery, then the same materials, now filed as exhibits and augmented by sworn timelines, permit this Court to review the same question. Fair use cannot simultaneously be determinable enough for self-help and indeterminable for judicial review of that self-help.

### B. Factor one: the uses are transformative criticism and commentary, including commentary on the photograph itself.

The first factor asks whether the use "adds something new, with a further purpose or different character." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994). After *Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 532-533 (2023), the inquiry is disciplined by purpose: a secondary use that shares the original's purpose is not transformative merely because it adds new expression. The uses here do not share the original's purpose. The photograph's purpose is portraiture: a flattering promotional likeness. The posts'

---

[2] This argument always had limited force. Lolcow LLC has consistently requested an evidentiary hearing. And Fong-Jones cannot explain why it is preferable both (1) for all images to be removed from the Internet, immediately; and (2) for all images to be available in perpetuity on PACER in a preliminary injunction filing.

purpose is criticism and ridicule of the person depicted and, in noticed instances, of the image itself: the Sexy Senior Citizen post reproduced in the movants' own exhibit remarks that the image looks like its subject "used some kind of a filter" or touched it up in Photoshop or with AI, and then mocks the result. ECF 33-3. Commentary that engages the work as a work is the heartland of § 107, and it is exactly what *BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F. Supp. 3d 395, 406–07 (S.D.N.Y. 2016), cited by Fong-Jones, said would matter.

The commentary aimed at the subject fares no worse. Courts have repeatedly held that using a person's photograph in critical commentary about that person is transformative, including where the image is copied wholesale: *Katz v. Chevaldina*, 802 F.3d 1178, 1182–84 (11th Cir. 2015), found fair use as a matter of law where an unflattering photo illustrated blog posts excoriating its subject and calling the subject "ugly" among other things. *Dhillon v. Doe*, No. C 13-01465 SI, 2014 U.S. Dist. LEXIS 24676 (N.D. Cal. Feb. 25, 2014) reached the same result for a headshot in a critical article. This District agrees: in *Shaykhoun v. Daily Mail*, No. 1:24-cv-09978 (ALC), 2026 U.S. Dist. LEXIS 40950, at *15–17 (S.D.N.Y. Feb. 26, 2026), copying social-media posts, images included, to comment on and critique them was held fair use.

At minimum, factor one strongly favors fair use for the photograph-critiquing, altered, annotated, and juxtaposed posts. The posts must also be evaluated in their actual setting: a critical discussion thread about a public figure, using a promotional headshot not as a market substitute for portrait licensing but as part of criticism and commentary, the setting *Katz* and *Dhillon* sustain. That context matters under § 107, and it is Lolcow's burden on this motion to show likelihood, not certainty, of success.

### C.    *The opposition's cases confirm the distinction.*

*Pirro* denied summary judgment where a news photograph was reposted with a hashtag and no discernible commentary on anything, 74 F. Supp. 3d 605, 617–24 (S.D.N.Y. 2015); *Griner v. King*, 104 F.4th 1, 9–10 (8th Cir. 2024), condemned a politician's commercial fundraising use of a meme; *Philpot v. Independent Journal Review*, 92 F.4th 252, 258–59 (4th Cir. 2024), found a bare crop of "negative space" was non-transformative. Each case lacked what this record shows: actual critical engagement, with the subject and with the image, in noncommercial forum posts. Fong-Jones's repeated refrain that "commentary on the subject is not commentary on the work" is a rule counsel constructed by sanding the facts off its own cases, and it is in any event inapplicable to unique facts (and unique posts) at issue here.

### D.    *Factors two through four: creative work, reasonable taking, and no market substitution.*

Factor two carries little weight where, as here, the work is used for criticism, and the photograph, while creative, is a published-in-function promotional likeness the subject distributed. Factor three asks whether the amount taken is reasonable in relation to the purpose; identification-and-critique of a specific image requires the image, and partial takings, the crops and overlays, took less. Factor four, "undoubtedly the single most important element of fair use," asks about market substitution. *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 566 (1985). No poster's crop, overlay, or meme substitutes for the licensing of a professional headshot. Fong-Jones's own account of the licensing practice is the licensing of the photographs to publications and conferences featuring Fong-Jones's work, ECF 42-1 ¶ 4; that declaration identifies no market in which critics license portraits for ridicule, and *Campbell* forecloses treating lost licensing-to-critics as cognizable harm, because "there is no protectible derivative market for

criticism." 510 U.S. at 592. This District applied exactly that logic this year in *MCM Grp. 22 LLC v. Perry*, 818 F. Supp. 3d 623, 633 (S.D.N.Y. 2026): where no market participant would turn to the transformed use in place of the original, the fourth factor favors fair use. No one shopping for a professional portrait license turns to a mocking Internet post instead. The unrebutted record is that the accused uses cost Fong-Jones nothing except the sting of the commentary, from which copyright provides no protection.

The provenance of the copyright reinforces the point. Fong-Jones did not create the photographs; Fong-Jones took an assignment of them from the photographer on May 21, 2025, and registered them three months later as a group of unpublished works. ECF 42-1 ¶ 2; ECF 42-2. By Fong-Jones's own account, exploitation of the works consists of licensing them to publications and conferences. ECF 42-1 ¶ 4. A copyright acquired by assignment, and enforced principally against critics, is not the engine of a market that Internet mockery can usurp. Factor four, the most important factor, favors fair use decisively, and with it the likelihood that Lolcow obtains the declaration it seeks.

### E.    The notices are independently vulnerable under § 512(f), and the objective enforcement pattern impeaches the claimed pre-notice analysis.

A copyright holder must consider fair use before sending a § 512(c) notice, and a notice sent without forming a subjective good-faith belief that the use is unauthorized violates § 512(f). *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1151–54 (9th Cir. 2016). The Fong-Jones Declaration recites that Fong-Jones "engaged in a robust and contemplative analysis" of "each image by each user" under all four factors, sparing the fair uses. ECF 42-1 ¶¶ 5–6. The objective record now permits that recital to be tested. In a single thread containing nine derivative variants of the photograph accompanied by materially indistinguishable brief commentary, the notices

captured exactly the five variants that remain visually similar to the original and spared the four most heavily transformed. Moon Reply Decl. ¶¶ 31–33. With the commentary held constant, the selection turned on a single variable: how much the image still looked like the original. That is a similarity screen, a copying detector. It is the one methodology that cannot be a fair-use analysis, because transformativeness is what it is blind to. And Fong-Jones's serial and ongoing DMCA notices swept in the post whose commentary most directly targeted the photograph itself, the strongest fair use in the record. ECF 33-3. The June 25 notice, served after the opposition was filed and aimed in part at material already removed two days earlier through ordinary moderation, completes the picture: DMCA "enforcement" is proceeding mechanically, without regard to fair use or even to whether the material is still there. *Id.* ¶¶ 8, 14.

## II.    THE "SERIOUS QUESTIONS" ARGUMENT MISTAKES ALTERNATIVE PLEADING FOR CONCESSION, AND CONFLATES THREE DIFFERENT STANDARDS.

The opposition's most inventive argument is that Lolcow defeated its own motion: by invoking the serious-questions prong, Lolcow supposedly conceded that a reasonable litigant could expect Fong-Jones to prevail, which is said to negate both the sham-petitioning exception and § 512(f)'s misrepresentation standard. ECF 42 at 30.[3] The argument works only by conflating three standards that operate at three different levels of the case.

The serious-questions formulation is an equitable standard for interim relief; it describes the strength of the movant's showing required when hardships tip decidedly, *Citigroup*, 598 F.3d at 35–38 (holding that the serious-questions standard "remains valid"), and pleading it in the alternative is ordinary, prudent motion practice. *Cf.* Fed. R. Civ. P. 8(d)(2)–(3) (permitting

---

[3] According to the Court's CM/ECF pagination, this would be page 35.

alternative, and even inconsistent, claims and defenses). Section 512(f) turns on something entirely different: the notice-sender's subjective state of mind at the moment each notice was sent, *Lenz*, 815 F.3d at 1153–54. And the objective-baselessness test of *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 60 (1993), governs immunity for petitioning the government, which a private takedown demand to a website is not, *see* Part IV below. A movant's candid acknowledgment that litigation carries risk says nothing about what the opposing party actually considered before each notice was sent. On the opposition's logic, no litigant could ever both seek a preliminary injunction and maintain a § 512(f) theory, because the alternative prong would forfeit the claim. Candor in briefing is not a waiver of rights, and it would be a strange rule of law that punished it.

### *The retaliation evidence is material, and it stands unrebutted.*

The opposition dismisses the Crawley and Hahn declarations as concerning "other individuals" and "noncopyrighted commentary," and therefore immaterial to whether these uses infringe. ECF 42 at 30. That response answers an argument Lolcow did not make. The declarations are not offered as a fifth fair-use factor; subjective motive is indeed not part of § 107. They are offered on the questions to which motive is central: whether Fong-Jones's DMCA notices were sent with the subjective good faith § 512(f) and *Lenz* require, and how the equities lie. On those questions the declarations stand effectively unrebutted, and the opposition's own footnote concedes their core: Fong-Jones "publicly named" Crawley deliberately, on Fong-Jones's own judgment that naming was warranted. ECF 42 at 30 n.15. A record of deliberate public identification of critics, combined with an enforcement pattern keyed to visual similarity rather than to fair use, is exactly the showing that separates legitimate rights-enforcement from retaliation dressed up as copyright enforcement.

8

## III.    THE IRREPARABLE-HARM SHOWING STANDS UNREBUTTED IN EVERY RESPECT THAT MATTERS.

### A.    The threatened injuries are to interests damages cannot restore.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion). Two such losses are threatened here, and neither is compensable after the fact. The first is anonymity: once a speaker is unmasked, no judgment can re-mask him. That is why, in every case in the *Arista* line, see, e.g., *Arista Records LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010), the fight is over disclosure itself and not over some later remedy: disclosure is the endgame. The second loss is the speech itself: each § 512(c) notice removes commentary now, extrajudicially, without any adjudication, and restoration under § 512(g) takes weeks at best. *Salinger* requires an actual showing of irreparable harm rather than a presumption, 607 F.3d at 79–82, and this is that showing: the injuries are structural, not speculative, and they recur with every notice. And Fong-Jones keeps sending increasingly aggressive and retaliatory notices.

Nor is the risk of unmasking or speech harms hypothetical on this record. A Kiwi Farms user previously identified in connection with criticism of Fong-Jones was subsequently fired from his job, and, per the sworn record, Fong-Jones celebrated the termination publicly. Moon Reply Decl. ¶ 29. Fong-Jones's own opposition confirms that the identification was deliberate: Crawley, it explains, "was publicly named" because Fong-Jones judged public naming to be warranted. ECF 42 at 30 n.15. Whatever one makes of that justification, it establishes the fact that matters here: when identification happens, consequences follow in the world, immediately and irreversibly, and the decision whether they should follow is being made by the adverse party rather than by a court. That is the precise harm interim relief exists to prevent.

9

### B.    The counter-notification "remedy" costs the speaker the very interest at stake.

The opposition's principal answer is that Congress supplied the remedy: a user may counter-notify and obtain restoration. ECF 42 at 31. But § 512(g)(3)(D) conditions counter-notification on the user disclosing his name and address and consenting to federal jurisdiction. For an anonymous speaker, the statutory "remedy" *is* the injury: it purchases the speech back at the price of the anonymity. A remedy that liquidates the interest it protects is the definition of an inadequate remedy at law. The opposition calls this "a feature of the statutory scheme Congress enacted." Fair enough, and it is why the only remedy that actually preserves the status quo for anonymous speakers is the equitable one sought here: a pause on new notices and applications while the fair-use question, which this Court will decide anyway, is decided once, rather than seriatim, notice by notice, at the speakers' expense.

### C.    Fong-Jones's opposition addresses the wrong harm.

The opposition observes that no identifying information will be produced unless and until this Court rules on the motions to quash. ECF 42 at 31. True, and beside the point. That observation addresses only the pending subpoenas. It does not address the notices, which operate immediately and extrajudicially (and which continue to be sent seriatim). It also does not address future subpoena applications, which issue from the Clerk without judicial screening, § 512(h)(4); and it does not address the demonstrated trajectory: three subpoena applications in six weeks, successive notices, and a new notice served during the briefing of this motion at material already removed. Moon Reply Decl. ¶¶ 8, 14. Each round imposes real, unrecoverable costs on an Internet forum primarily managed by one person and on the speakers, in a posture where fee recovery is uncertain at best. Harm that accrues in increments is still irreparable when no increment can be clawed back.

**D.      The assertion that Lolcow can simply restore the posts ignores the coercive structure of § 512.**

Finally, the opposition argues there is "no live removal for the injunction to prevent" because the suppressed posts are "completely under [Lolcow's] own power" to restore. ECF 42 at 31.[4] This misdescribes both the facts and the legal position in which Fong-Jones's own filings have placed Lolcow. The posts were suppressed in compliance with Fong-Jones's notices; that compliance is what the safe harbor conditions on. 17 U.S.C. § 512(c)(1)(C). Fong-Jones has now counterclaimed for damages on the theory that hosting the material is Lolcow's own volitional infringement. ECF 51; ECF 56. If Lolcow restored the posts unilaterally, tomorrow's brief would cite the restoration as willful infringement and as forfeiture of the safe harbor; indeed, the opposition already characterizes Lolcow's hosting decisions in exactly those terms. Lolcow's "power" to restore is therefore illusory because Fong-Jones wants to have it both ways: every path is penalized while the notices remain outstanding and the fair-use question remains unadjudicated. That coercive structure is not a reason to deny relief; it is the reason relief is needed. And the opposition's companion complaint, that the underlying files were suppressed rather than obliterated, condemns the only architecture the statute permits: § 512(g)'s restoration remedy presupposes that suppressed material still exists, and the preservation obligations that attach to pending litigation forbid destroying the very files over which Fong-Jones now seeks damages. Fong-Jones cannot demand destruction on page 8 and threaten spoliation sanctions on page 23 n.14 for the same files.

---

[4] According to the CM/ECF pagination, this is page 36.

11

## IV.   THE PROPOSED INJUNCTION RESTRAINS PRIVATE SELF-HELP, NOT PETITIONING, AND THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR IT.

### A.   A § 512(c) notice is not a petition to any court.

The opposition brands the motion an "impermissible prior restraint on petitioning." ECF 42 at 32. But a takedown notice is a private demand letter to a private company, given legal consequence by a statute, § 512(c), that operates entirely outside any courtroom; and a § 512(h) application is ministerial process the Clerk must issue without judicial involvement. Restraining a litigant's extrajudicial self-help during the pendency of an action adjudicating the same rights restrains no petitioning: Fong-Jones remains free to assert every claim in this Court, by motion, counterclaim, or third-party complaint, as Fong-Jones has already done. ECF 51; ECF 54. *Noerr-Pennington* and *Prof'l Real Estate Inv'rs* protect access to tribunals; they do not constitutionalize the DMCA notice button. And the opposition's own authorities, *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 790 F. Supp. 2d 1024, 1026 (N.D. Cal. 2011); *Design Furnishings, Inc. v. Zen Path, LLC*, 2010 U.S. Dist. LEXIS 112314 (E.D. Cal. Oct. 20, 2010); and *Beyond Blond Productions, LLC v. Heldman*, 479 F. Supp. 3d 874, 886–89 (C.D. Cal. 2020), enjoined exactly this conduct, takedown campaigns, pending adjudication. Its proffered distinction, that those courts first assessed the merits, is satisfied here: the record is complete or can be made so with an evidentiary hearing, and Lolcow has made the merits showing.

### B.   The balance of hardships tips decidedly toward Lolcow.

Enjoined, Fong-Jones loses nothing except the ability to keep sending notices and clerk-issued process about a photograph whose fair-use status this Court is about to decide in a case where Fong-Jones is a counterclaim-plaintiff. Any claims remain fully intact; the damages theories

12

remain intact; the discovery rights under the Federal Rules remain intact. Without an injunction, Lolcow and the speakers absorb continued extrajudicial removals of their speech, continued applications, and continued costs. The Does litigate under the standing threat that the next notice or subpoena issues tomorrow. A movant who asks only that the dispute be centralized and adjudicated in an orderly manner in the forum the non-movant has joined asks for very little, and the non-movant who resists gives away the true objection: Fong-Jones prefers the extrajudicial track precisely because it is faster than adjudication and cheaper than being right. That it is more disruptive to Lolcow LLC is an added bonus for a litigant seeking to punish critics.

### C.    *The public interest favors the injunction.*

Congress backed the notice regime with § 512(f) liability precisely because misdirected takedowns injure the public, not merely the target; knowing misuse of the DMCA's procedures does what the court condemned in the seminal § 512(f) case: it wields the statute "as a sword to suppress publication of embarrassing content rather than as a shield to protect its intellectual property." *Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1204–05 (N.D. Cal. 2004). The public interest in anonymous critical speech, *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341–43 (1995), and in the integrity of the § 512 framework both point the same way: toward one adjudication, here, on a full record, rather than a rolling campaign of serial DMCA notices and subpoenas.

## V.    THE INJUNCTION CAN BE TAILORED TO MEET EVERY RULE 65(d) OBJECTION.

The opposition's vagueness critique targets the phrase "materially similar critical commentary." ECF 42 at 32–33. The concern is one of drafting, not of remedy, and Lolcow is happy to submit a conformed proposed order limited to: (1) transformative or derivative

13

photographs of Registration No. VAu001576006; (2) the specific posts now in evidence, ECF 33-1 through 33-8, identified by URL; and (3) the pendency of this action, with leave to Fong-Jones to apply to this Court, on notice, for permission to serve any particular notice Fong-Jones believes is compelled by new circumstances. An order so drawn would identify the works by registration number, the conduct by docket citation, and the term by the life of the case, and the safety valve eliminates any residual overbreadth objection. Rule 65(d) requires reasonable detail, not prophecy. The two components of the requested relief also warrant separate justification, and each has one. The withdrawal of pending notices is restorative, anti-coercion relief: as Part III.D explains, the outstanding notices continue to hold speech down and to penalize restoration even before any adjudication, so leaving them in place preserves not the status quo but the coercion. Nor is withdrawal a novel remedy: as Lolcow's opening memorandum showed, courts have ordered withdrawal of pending takedown notices in precisely this posture. ECF 35 at 12–13, 23 (discussing *Amaretto Ranch*, *Design Furnishings*, and *Beyond Blond*). Any restraint on future notices and subpoena applications is prophylactic and narrow: it reaches only the identified works and materially identical uses, only during this case, and only subject to the leave-of-Court safety valve. Neither component asks this Court to adjudicate the copyright case in advance; both ask only that enforcement await the adjudication both sides have requested.

## VI.    NO BOND, OR A NOMINAL BOND, IS APPROPRIATE, AND LOLCOW RENEWS ITS REQUEST FOR AN EVIDENTIARY HEARING.

The opposition identifies no monetary harm it would suffer from a pause in notices during the case, and where the enjoined party faces no quantifiable loss, no bond or a nominal bond is proper under Rule 65(c), which vests the amount of security in the Court's discretion and requires security only "in an amount that the court considers proper" to compensate a wrongfully enjoined

14

party. A party enjoined from sending takedown notices about material whose removal Fong-Jones can obtain from this Court on motion loses, at most, time. And that time will elapse in a forum Fong-Jones has already invoked.

Lolcow also renews, and does not waive, its request for an evidentiary hearing. ECF 35, Part V. The documentary record alone supports relief, but the opposition has chosen to contest how the suppression system operates and what its declarants observed. To whatever extent the Court considers any of those facts material and genuinely disputed, they should be resolved on live testimony rather than on dueling declarations, and Mr. Moon will appear for that purpose. The opposition's own position that no hearing is required, ECF 42 at 33, simply concedes that the material facts are undisputed. Either way, the motion should be granted: on the papers if the facts stand undisputed, and after a hearing if they do not.

### CONCLUSION

For the foregoing reasons and those stated in its opening memorandum, Lolcow respectfully requests that the Court enjoin Defendant, pending final judgment, from serving further § 512(c)(3) takedown notices and from applying for further § 512(h) subpoenas directed at the works and uses identified above, order the withdrawal of the pending notices, and grant such other relief as is just.

Dated: July 6, 2026

                                            Respectfully submitted,

                                            <u>/s/ Matthew D. Hardin</u>
                                            Matthew D. Hardin
                                            Attorney Reg. No. 5899596
                                            Hardin Law Office
                                            101 Rainbow Drive # 11506
                                            Livingston, TX 77399
                                            Phone: 212-680-4938
                                            Email: MatthewDHardin@gmail.com
                                            *Counsel for Plaintiff Lolcow LLC*

16

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c), the undersigned certifies that this memorandum contains 4,367 words, exclusive of the caption, table of contents, table of authorities, signature block, and this certificate, as counted by the word-processing program used to prepare it, and complies with the word-count limitation requested in the accompanying letter motion.


/s/ Matthew D. Hardin
Matthew D. Hardin