**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LOLCOW LLC, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) Case No. 1:26-cv-02059-KPF |
| v. | ) |
| | ) |
| ZHEN ELIZABETH FONG-JONES, | ) |
| | ) |
|    Defendant. | ) |

**FIRST AMENDED COMPLAINT**
**JURY TRIAL DEMANDED**

Plaintiff Lolcow LLC ("Lolcow"), for its First Amended[1] Complaint against Defendant

Zhen Elizabeth Fong-Jones ("Defendant" or "Fong-Jones"), alleges as follows:

**NATURE OF THE ACTION**

1. This case is about the misuse of copyright law as a tool to suppress criticism. Lolcow

operates Kiwi Farms, an online discussion forum on which users, not Lolcow, choose what to post.

Anonymous users criticized and mocked Fong-Jones, a public figure, including by using and

altering a professional photograph of Fong-Jones to make critical points about Fong-Jones' public

statements and conduct and about the photograph itself.

2. This case began with Fong-Jones sending demand letters, followed by demands for

secrecy contracts and six-figure payouts, in an effort to use copyright law as a tool to remove

criticism from the internet. ECF Nos. 1-1, 1-2, 1-3, and 51-2. Faced with escalating demands and

an accusation from Fong-Jones that anything other than complete and instant capitulation

---

[1] This Amended Complaint is filed as of right pursuant to Fed. R. Civ. P. 15 (a)(1)(B).

constituted willfulness with elevated statutory damages, Plaintiff was forced into a position where the only reasonable action was to seek a judicial declaration as to the rights and obligations of the parties. ECF No. 1.  Lolcow came to this Court in good faith, seeking a declaration that any uses of Fong-Jones' headshot in altered and edited form for purposes of criticism were fair uses, and both statutorily and Constitutionally protected.

3. Rather than litigate whether those uses are fair, Fong-Jones immediately weaponized this Court's processes in a manner that illustrates a broader pattern of copyright abuse. Fong-Jones has turned to the *ex parte* mechanisms of the Digital Millennium Copyright Act to issue serial subpoenas arising from images that are clearly critical of Fong-Jones and even Fong-Jones' litigation tactics, to include what appear to be handwritten doodles. As part of this escalating campaign, Fong-Jones served multiple takedown notices under 17 U.S.C. § 512(c)(3) which were unrelated to the original nexus of Fong-Jones' copyright claims, and pursued subpoena applications under 17 U.S.C. § 512(h) to remove the speech and to unmask the speakers.

4. Fong-Jones has done so despite that the challenged uses are criticism and commentary protected by the fair-use doctrine, and despite the fact that Lolcow came to this Court in good faith to seek clarity from the Court as to its legal obligations. As will be more fully explained below, Fong-Jones appears to use an automated system or artificial intelligence to identify content and send takedown notices without any manual review or fair use analysis. Fong-Jones is, in short, a copyright troll. *McDermott v. Monday Monday, LLC*, No. 17-cv-09230 (DLC), 2018 U.S. Dist. LEXIS 28664, at *8 n.4 (S.D.N.Y. Feb. 22, 2018) ("copyright trolls are more focused on the business of litigation than on selling a product or service or licensing their copyrights to third parties to sell a product or service.").

5. The challenged uses of Fong-Jones' headshot are facially non-infringing fair uses under 17 U.S.C. § 107. They are criticism and comment directed at a public figure and at the underlying photographic work itself. The vast majority of these derivative uses alter the photograph to make their critical point; they use no more of the work than necessary to identify the object of the criticism; and they do not substitute for the original photograph or harm any market for it. Indeed, there appears to be no market at all for the relevant headshot: it was registered solely to give rise to litigation.

6. Fong-Jones' takedown notices misrepresent that transparently fair uses are infringing. They were sent without the consideration of fair use that the law requires, and for the improper purpose of suppressing criticism and identifying critics, as Fong-Jones' documented treatment of other alleged Kiwi Farms users confirms. *See, e.g.*, ECF Nos. 30-6, 30-7, and ECF No. 42-3 at 3 *et seq*.

7. Against this backdrop, Lolcow seeks declarations that the challenged uses are non-infringing fair use; damages, costs, and attorneys' fees for Fong-Jones' knowing misrepresentations under 17 U.S.C. § 512(f); injunctive relief; and fees under 17 U.S.C. § 505.

### THE PARTIES

8. Plaintiff Lolcow LLC is a limited liability company organized under the laws of the State of West Virginia. Lolcow owns and operates the online discussion forum known as Kiwi Farms. Lolcow's sole member is Joshua Moon.

9. Defendant Zhen Elizabeth Fong-Jones is an individual who has appeared in this action, claims to be the owner by assignment of the copyright in the photograph at issue, and has asserted counterclaims for copyright infringement against Lolcow and others.

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Copyright Act of 1976, 17 U.S.C. § 101 et seq., including 17 U.S.C. §§ 107 and 512(f), and under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

11. An actual, justiciable controversy exists between the parties. Fong-Jones has asserted that Lolcow and its users infringe the copyright Fong-Jones claims, has served takedown notices and pursued Section 512(h) subpoenas directed at the challenged uses, threatened litigation, and has now asserted infringement counterclaims in this action.

12. This Court has personal jurisdiction over Fong-Jones, who has appeared and asserted affirmative counterclaims in this action.

13. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and 1400(a).

## FACTUAL ALLEGATIONS

### A. *Lolcow operates a forum for user-generated content.*

14. Lolcow operates Kiwi Farms, an online forum on which registered users create threads and post and comment on content of their own choosing. Lolcow does not author the posts that its users create.

15. Like every interactive website that hosts user content, Lolcow's Terms of Service grant Lolcow a limited license to store and display the material that its users submit, which permits Lolcow to operate the forum. That license concerns content that users post; it does not make Lolcow the author or originator of any particular user post. Lolcow's Terms of Service in this respect are in line with industry standard terms of service for all social media companies or Internet forums.

### B. *Fong-Jones claims a copyright in the photograph at issue.*

16. Fong-Jones claims a copyright in a professional photographic headshot depicting Fong-Jones. Fong-Jones alleges that the work is registered with the United States Copyright Office as Registration No. VAu 1-576-006, with an effective date of registration of August 25, 2025, naming Zackary Drucker as author and Fong-Jones as copyright claimant by assignment.

### C. *The challenged uses criticize both Fong-Jones and the photograph itself.*

17. Beginning on or about February 26, 2026, Fong-Jones, through counsel, asserted that certain posts on Kiwi Farms infringed the claimed copyright in the photograph. The posts Fong-Jones challenged, and the posts later targeted by the Section 512(h) subpoena applications, were created by anonymous Kiwi Farms users and use the photograph as an object of criticism, both of Fong-Jones and of the photograph itself, not as a substitute for the photograph. None of the uses impinge on any ostensible market for Fong-Jones' photograph. What's more, on information and belief, there is no such market.

18. The first image Fong-Jones challenged is a screenshot of a post from Fong-Jones' own Bluesky social-media account, embedded within additional commentary posted by a Kiwi Farms user. The screenshot is itself commentary upon Fong-Jones' public statements, and only a portion of it reproduces any image in which Fong-Jones claims a registered copyright. ECF No. 33-5.

19. That commentary criticizes the photograph itself, not only its subject. As Lolcow explained in its written response to Fong-Jones' first demand, the user "critiques both the artistic merit of the photograph and the appearance of [Fong-Jones]," including by observing that the lighting in the photograph "does not do [Fong-Jones] any favors," and by responding to Fong-Jones' own social-media boasting about the visual and artistic qualities of the headshot. ECF No.

1-2. Criticism of a photograph's lighting, composition, and artistic merit is comment on the work itself, which lies at the heart of the fair-use doctrine, and such criticism cannot be made effectively without showing the image being criticized.

20. The second image is a cropped and altered version of the headshot, overlaid with the text "Consent accidents do occasionally happen." ECF No. 33-1. That text refers to, and criticizes, Fong-Jones' own public characterization of allegations of sexual assault as a "consent accident." By altering the photograph, which Fong-Jones publicly described as conveying professionalism and a smile, and pairing it with that phrase, the user transformed the message of the original image into a pointed criticism, juxtaposing the smile with an ominous and euphemistic warning. The alteration comments on the photograph as Fong-Jones' own chosen self-presentation, as well as on Fong-Jones' conduct.

21. The additional posts later targeted by Fong-Jones with takedown notices and then subpoenas are of the same character. They include tighter crops of the headshot paired with critical captions, slight visual modifications of the image paired with text mocking Fong-Jones' statements and appearance, crops overlaid with critical commentary, and the image juxtaposed with other material in recognized meme formats. Each uses the photograph to identify and criticize Fong-Jones and the work itself. None offers the photograph as a substitute for the original or competes with any market for it. ECF Nos. 33-1 through 33-8.

22. Fong-Jones' pattern has culminated in a demand that Lolcow LLC remove the following two images, both of which are line-drawn renditions that materially replace the photograph's expressive details while commenting on Fong-Jones and on Fong-Jones' copyright-enforcement campaign in this litigation:



Figure 2. Ethically and DMCA-compliantly schematic reconstruction of a photographic consent accident        Figure 2. Ethically and DMCA-compliantly schematic reconstruction of a photographic consent accident

### D. Fong-Jones pursued an escalating campaign of takedown notices and subpoenas.

23. On February 26, 2026, Fong-Jones, through counsel, served a takedown notice on Lolcow's designated agent demanding removal of the challenged material. On March 2, 2026, Lolcow responded, explaining that the uses are protected by fair use, that the uses criticize the photograph itself as well as its subject, and that the first image is a screenshot of a social-media post rather than the registered work. ECF No. 1-2.

24. Fong-Jones rejected that explanation, escalated the demands, repeatedly alleged that Lolcow had acted willfully, and imposed a deadline of 5:00 p.m. on March 13, 2026. ECF No. 1-3. Because Fong-Jones was already enforcing the asserted copyright through the DMCA and threatening suit, Lolcow commenced this action on March 12, 2026, to obtain an adjudication of the parties' dispute. ECF No. 1.

25. After this action was filed, Fong-Jones did not answer and ask this Court to decide fair use in the ordinary course. Instead, Fong-Jones pursued serial Section 512(h) subpoena applications and obtained the issuance of subpoenas, continuing to target the same photograph and immaterial variants of it used in the same critical commentary. Each subpoena application was

supported by a declaration swearing that its sole purpose was to identify alleged infringers in order to protect Fong-Jones' rights under the Copyright Act. ECF Nos. 12-1, 14-1, 16-1.

26. Fong-Jones' takedown notices contained no analysis of fair use and gave no consideration to whether the challenged uses are criticism and comment, even though a copyright owner must consider fair use before issuing a takedown notification. *Shaffer v. Kavarnos*, No. 23-CV-10059 (KMK), 2025 U.S. Dist. LEXIS 153176, at *4 (S.D.N.Y. Aug. 7, 2025), collecting cases within this District and citing *Lenz v. Universal Music Corp.*, 815 F.3d 1145 (9th Cir. 2016).

27. Fong-Jones does not even appear to have manually reviewed the material for which Fong-Jones sent takedown notices, each of which certified, under penalty of perjury, that Fong-Jones was authorized to act on behalf of the owner of the copyright allegedly infringed, and that Fong-Jones had a good-faith belief that the identified uses were not authorized by the copyright owner, its agent, or the law. 17 U.S.C. § 512(c)(3)(A)(v)–(vi). For example, one individual named Betsy Dupuis posted approximately nine images critical of Fong-Jones in quick succession on April 17, 2026. These images can be viewed (except to the extent they have been removed pursuant to a takedown notice) at https://kiwifarms.st/threads/betsy-dupuis-ask-me-anything.231312/page-9. All of the images appear in roughly the same location on the same webpage, such that it would be virtually impossible for any human reviewer to see certain of the images but not the others.

28. Illustrative of Fong-Jones' slapdash approach and the lack of manual review prior to sending DMCA takedown notices, Fong-Jones claims that the following images are infringing:

a)



b)



c)



d)



e)



29. But Fong-Jones does not claim that the following similar images, on the very same webpage, are infringing:

a)



b)



Apr 17, 2026

Liz Fong Jones on date night

Attachments

71fe152d-b84d-473d-b63d-...

unsilence
Betsy Dupuis
Joined: Oct 21, 2025

4   1

Report   Censor

Like   + Quote   Reply

#168

c)



**unsilence**
Betsy Dupuis

Apr 17, 2026                                                    #169

Liz Fong-Jones is my father according to her, but I disagree.

Attachments

30. On information and belief, and based on the selective takedown notices for images posted by the same user on the same URL, Lolcow alleges that Fong-Jones did not even bother manually viewing ostensibly infringing URLs before sending takedown notices signed under penalty of perjury. Especially in contrast to the image Fong-Jones claims is infringing at ECF No. 33-3, Fong-Jones' view of what images constitute fair use and which images do not is incoherent and impossible to reconcile with any good-faith fair use analysis by Fong-Jones or her counsel. The pattern is explicable only as the output of a screen keyed to visual similarity: the five variants most visually similar to the original drew takedown notices, while the four most heavily transformed did not, despite materially indistinguishable accompanying commentary. ECF No. 62-1 ¶¶ 31–32. A visual-similarity screen detects copying; it is incapable of evaluating fair use.

### E. Fong-Jones' purpose is to suppress criticism and to unmask critics.

31. Fong-Jones' notices and subpoenas are not directed at protecting any market for the photograph. Indeed, there is no such market. Fong-Jones' purpose is to remove criticism of Fong-Jones and to identify the anonymous users who post that criticism.

32. On information and belief, and based on sworn declarations filed in this action, the same law firm now representing Fong-Jones, Kamerman, Uncyk, Soniker & Klein, P.C., through its "investigator" Kathryn Tewson, identified a Kiwi Farms user, Kevin Crawley, after which Fong-Jones publicly disclosed Crawley's name, employer, and position, as well as intimate details relating to Mr. Crawley's medical history and minor children, and celebrated when Crawley lost employment at Meta. ECF No. 30-6. Yet Fong-Jones claims that same law firm and even that same employee can be trusted in this action not to use identifying information for any purpose other than to vindicate copyrights. Under the circumstances, and especially in light of Fong-Jones' repeated boasts that more Kiwi Farms users are capable of being doxxed going forward, it is difficult to see

Fong-Jones' copyright takedown notices and ensuing legal process as anything other than an effort to chill anonymous critics.

33. On information and belief, and based on sworn declarations filed in this action, the same firm sent threatening correspondence to another individual, Thomas Hahn, over anonymous commentary that, by Fong-Jones' own account, involved no copyrighted material. ECF No. 30-7, 42-3 at 4. It is apparent from Fong-Jones' own investigator's sworn declaration that Fong-Jones sought to identify Mr. Hahn in order to silence critical speech.

34. On information and belief, Fong-Jones and Fong-Jones' agents conduct routine surveillance of Kiwi Farms in order to identify its users. These facts demonstrate that Fong-Jones knew, or was willfully blind to the fact, that the challenged uses are criticism and commentary rather than infringement, and that the notices were issued to suppress that criticism and to unmask its authors.

### F.  Fong-Jones takes irreconcilable positions on Lolcow's status.

35. To obtain subpoenas from the Clerk under 17 U.S.C. § 512(h), and to defend the service of two of those subpoenas by email upon Lolcow's designated DMCA agent, Fong-Jones has repeatedly represented that Lolcow is a "service provider" storing material "at the direction of a user," including in three declarations sworn under § 512(h)(2)(C) averring that the sole purpose of the subpoenas was to obtain the identity of alleged infringers and that the information would be used only to protect rights under the Copyright Act. ECF Nos. 12-1, 14-1, 16-1; ECF No. 42 at 24.

36. In the counterclaim and in subsequent filings, Fong-Jones asserts the opposite: that the hosting and display of the accused material is Lolcow's own volitional conduct. Fong-Jones characterizes the counterclaim as alleging that Lolcow "itself reproduced, publicly displayed, and

distributed the photograph," and Fong-Jones' counsel has written to this Court that "[e]very time Lolcow's servers deliver the photograph to a viewer, Lolcow—not the uploading user—performs the act of public display and distribution." ECF No. 56 at 1–2; see ECF No. 51.

37. Both positions cannot be true. Yet Fong-Jones asserts each contradictory position instrumentally as part of two contradictory theories of this case: First, Lolcow is described as a passive service provider when Fong-Jones invokes the DMCA's ministerial, *ex parte* machinery. But Fong-Jones alleges that Lolcow is a volitional direct infringer when Fong-Jones seeks damages. The willingness to swear to one account of Lolcow's role to seek subpoenas while pleading the diametrically opposite position in the same action for damages purposes demonstrates that Fong-Jones' takedown notices and subpoena applications were not submitted in the good faith the statute requires, and that Fong-Jones is proceeding in bad faith.

### G.  Fong-Jones' enforcement has continued during this litigation and now targets commentary about this lawsuit itself.

38. On June 25, 2026, after Lolcow and the Doe movants had filed their motions and after Fong-Jones had filed an omnibus opposition, Fong-Jones' counsel served yet another takedown notice. That notice was directed in part at what appears to be a hand-drawn derivative image or doodle in a post that Lolcow's ordinary moderation had already removed on June 23, 2026, two days before the notice was sent. ECF No. 62-1 ¶¶ 8, 14.

39. The images targeted by the June 25, 2026 notice are reproduced at ECF No. 62-2. They comment on this lawsuit and on Fong-Jones' litigation tactics. A takedown notice aimed at material that had already been removed, and especially a notice targeting commentary about this very case, shows that Fong-Jones acted without verifying whether the identified material remained publicly accessible and, combined with the notice's treatment of line-drawing criticism as infringement,

supports the inference that Fong-Jones did not conduct the individualized, context-sensitive review of fair use that Fong-Jones has represented to this Court.

### H. Lolcow holds a good-faith belief that the uses are non-infringing.

40. Lolcow holds a good-faith belief, grounded in settled fair-use law and the nature of the images at issue themselves, that the challenged uses are non-infringing. Fong-Jones, by contrast, has no good-faith basis to believe that these criticisms and comments infringe any copyright Fong-Jones holds.

## COUNT I

### Declaratory Judgment of Non-Infringement and Fair Use
### (17 U.S.C. § 107; 28 U.S.C. § 2201)

41. Lolcow repeats and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

42. An actual controversy exists concerning whether the challenged uses of the photograph infringe any copyright held by Fong-Jones. Fong-Jones contends that they do; Lolcow contends that they do not. Fong-Jones' serial takedown notices, followed by DMCA subpoenas, materially disrupts the Kiwi Farms website and drives up Lolcow's cost of doing business.

43. The challenged uses are fair use under 17 U.S.C. § 107. They are made for purposes of criticism and comment about a public figure and about the photographic work itself; they are transformative, in that several alter the photograph to convey a critical message distinct from the original's purpose; they use no more of the work than necessary to identify the object of the criticism; and they do not substitute for the photograph or harm any market for it.

44. Because the underlying uses are non-infringing, Lolcow's hosting and display of those uses does not infringe any copyright held by Fong-Jones.

45. Lolcow is entitled to a declaration that the uses challenged by Fong-Jones are non-infringing fair use and that Lolcow has not infringed any copyright held by Fong-Jones.

## COUNT II

### Knowing Material Misrepresentation Under 17 U.S.C. § 512(f)

46. Lolcow repeats and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

47. Section 512(f) imposes liability on any person who knowingly and materially misrepresents that material or activity is infringing. A copyright owner must form a good-faith belief that a use is not authorized by the law, including the fair-use doctrine, before issuing a takedown notification. *Lenz v. Universal Music Corp.*, 815 F.3d 1145 (9th Cir. 2016).

48. Through the takedown notices, Fong-Jones knowingly and materially misrepresented that the challenged material is infringing. Fong-Jones either did not consider fair use for each challenged use or consciously avoided information demonstrating fair use. Lolcow had already placed Fong-Jones on express notice of the critical and transformative character of the uses. Nevertheless, Fong-Jones continued issuing materially identical notices without addressing the uses' critical purpose, their alterations, their lack of market substitution, or their post-specific context.

49. The June 25, 2026 notice, served during the briefing of the parties' motions and directed in part at material that had already been removed, shows that the notice was transmitted without verifying whether the identified material remained publicly accessible before it was sent, which supports the inference that Fong-Jones did not conduct the individualized, context-sensitive fair-use review Fong-Jones has represented.

50. Fong-Jones' bad faith is further demonstrated by the irreconcilable positions Fong-Jones has taken as to Lolcow's status. To obtain the takedown notices and the § 512(h) subpoenas, Fong-Jones swore, under penalty of perjury, that Lolcow is a passive "service provider" that merely stores material at the direction of its users. Yet to obtain damages, Fong-Jones has pleaded the opposite in the counterclaim, alleging that Lolcow is itself the volitional actor that reproduces, displays, and distributes the photograph. A litigant who swears one account of the facts to invoke the DMCA's ex parte machinery, while pleading the contrary account to recover damages, has not formed the good-faith belief the statute requires; the contradiction is itself evidence that the misrepresentations were knowing.

51. As a result of Fong-Jones' misrepresentations, and in reliance on them, Lolcow disabled public access to the identified posts, and Lolcow and its users were injured. Fong-Jones' campaign was so disruptive that Lolcow, anticipating that it would be required to process dozens of similar notices, designed and built an entirely new software system for the specific purpose of handling the serial DMCA takedown requests it expected to receive from Fong-Jones. Lolcow further incurred costs and expended its resources in receiving, reviewing, locating, and suppressing the material identified in Fong-Jones' notices.

52. These injuries were caused by Fong-Jones' misrepresentations and by Lolcow's reliance on them, and are distinct from any expense Lolcow has incurred in contesting the § 512(h) subpoenas or in prosecuting this declaratory-judgment action. They include, without limitation, the engineering time spent designing and building the takedown-processing system described above; the time spent receiving and processing Fong-Jones' notices; the costs of locating and suppressing the identified posts and of preserving the affected material against the possibility of

restoration under 17 U.S.C. § 512(g); and the costs and fees Lolcow incurred in responding to Fong-Jones' serial DMCA notices.

53. Fong-Jones is liable to Lolcow under 17 U.S.C. § 512(f) for the damages Lolcow has incurred, including its costs and reasonable attorneys' fees. Additionally, Lolcow is entitled to an injunction requiring Fong-Jones, before issuing any further takedown notice arising from the specific works and posts identified in this action, to conduct and contemporaneously document an individualized, good-faith assessment of whether the targeted use is a fair use under 17 U.S.C. § 107, as required by 17 U.S.C. § 512(c)(3)(A) and *Lenz v. Universal Music Corp.*, 815 F.3d 1145 (9th Cir. 2016).

## COUNT III

**Alternative Declaratory Judgment of Unenforceability Due to Copyright Misuse**

**(28 U.S.C. §§ 2201–2202)**

54. Lolcow repeats and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

55. This claim is pleaded in the alternative and arises from the same controversy as Fong-Jones' counterclaim for infringement. Fong-Jones is asserting a copyright in the photograph not to protect any market for the work, of which there is none, but to suppress non-infringing criticism of Fong-Jones and to unmask the anonymous speakers who voice it. Fong-Jones' assertion of the copyright thus reaches beyond the limited monopoly the Copyright Act confers, seeking to control expression the copyright does not reach and to strip anonymous critics of their First Amendment right to speak without disclosing their identities.

56. That conduct is copyright misuse. Even if the Court were to find, *arguendo*, that there was some underlying infringement, Lolcow is entitled, in the alternative, to a declaration that any

copyright Fong-Jones holds is unenforceable against the challenged uses as a result of Fong-Jones copyright misuse.

## PRAYER FOR RELIEF

WHEREFORE, Lolcow respectfully requests that the Court:

A. Declare that the challenged uses of the photograph are non-infringing fair use under 17 U.S.C. § 107, and that Lolcow has not infringed any copyright held by Fong-Jones;

B. Declare, in the alternative and to the extent the Court reaches Fong-Jones' infringement counterclaim, that any copyright Fong-Jones holds is unenforceable against the challenged uses by reason of copyright misuse;

C. Enjoin Fong-Jones, and those acting in concert with Fong-Jones, from issuing any further takedown notification under 17 U.S.C. § 512(c)(3) directed at the specific works and posts identified in this action;

D. Award Lolcow its damages, costs, and reasonable attorneys' fees under 17 U.S.C. § 512(f);

E. Award Lolcow its costs and reasonable attorneys' fees under 17 U.S.C. § 505 and Federal Rule of Civil Procedure 54; and

F. Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Lolcow demands a trial by jury on all issues so triable.

Dated:  July 10, 2026

<div style="margin-left: 45%;">

HARDIN LAW OFFICE

By:  /s/ Matthew D. Hardin
Matthew D. Hardin
Attorney Reg. No. 5899596
101 Rainbow Drive # 11506
Livingston, TX 77399
Phone: 212-680-4938
Email: MatthewDHardin@gmail.com
Counsel for Plaintiff Lolcow LLC

</div>